W. E. JAKWAY v. RANSOM S. PROUDFIT.*

FILED MARCH 8, 1906. No. 14,183.

1. False representations as the basis of an action, whether for damages or for the rescission of a contract, are such only as in some manner actually mislead the party to his damage. *American Building & Loan Ass'n v. Bear,* 48 Neb. 455, followed and approved.

2. Prejudicial Error. Action of the trial court in excluding testimony offered by the defendant examined, and *held* prejudicial.

3. Instructions examined, and *held* prejudicial.

ERROR to the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Reversed.*

*Rose & Comstock* and *I. H. Hatfield,* for plaintiff in error.

*Stewart & Munger, contra.*

*Rehearing allowed. See opinion, p. 67, *post.*

OLDHAM, C.

This was an action by Ransom S. Proudfit, plaintiff in the lower court, to recover from defendant Jakway the consideration for the purchase price of 50 shares of capital stock of the Lincoln Incubator Company. The petition alleged that the purchase of the stock was induced by the false and fraudulent representations of the defendant concerning the indebtedness of the corporation; that, on the discovery of the deceit practiced upon plaintiff by defendant, plaintiff rescinded the contract and tendered back the shares of stock. It was also alleged that the capital stock is of less value than it would have been had the representations relied upon been true. Defendant answered this petition with a plea of a subsequent ratification of the contract of purchase by the plaintiff after full knowledge of the condition of the company's indebtedness, a general denial of any misrepresentation, and an allegation that plaintiff purchased the stock with full knowledge of the condition of the company. On issues thus joined, there was a trial to the court and jury, verdict for the plaintiff, and judgment on the verdict. To reverse this judgment defendant brings error to this court.

There is no serious controversy in the testimony, except as to the subsequent ratification of the contract by the plaintiff after full knowledge of the condition of the company. On that issue there was a conflict of testimony, which was properly submitted to the jury, and we feel bound by the verdict on that question.

The misrepresentation relied upon for a rescission of the contract was as to the liability of the company as indorser and guarantor of two notes, aggregating $1,000, executed by one Garoutte in payment for certain shares of capital stock in the corporation. The notes, when taken, had been cashed at their full face value at the Columbia National Bank, and were indorsed by the corporation. The notes were not due at the time of the

purchase of the capital stock by Proudfit, and the liability of the company as indorser on these notes was not carried as a liability on the books of the corporation. There is no contention that any other liability was concealed from plaintiff by either defendant or the secretary of the corporation. It appeared from such of the evidence as was admitted by the trial court that these notes, which became due after the commencement of this suit, were paid by the maker at maturity. Defendant also offered to prove that the maker of the notes was worth over $250,000 above all liabilities and exemptions, but this evidence was excluded by the trial court. And by instruction No. 5, given by the court on its own motion, the jury were told that, if they believed that defendant made the false representation alleged and that the same was a material inducement to plaintiff to purchase the stock in question, then it would be immaterial and no defense to the action that, subsequent to the commencement of the action, the Garoutte notes were taken up and the Lincoln Incubator Company thereby relieved from liability thereon, unless they should find that the same was done in pursuance of a contract between the plaintiff and defendant. By instruction No. 7 the court told the jury, in substance, that the fact of the solvency of Garoutte was wholly immaterial. In other words, the court submitted the case to the jury on the theory that, if the representation of the indebtedness of the corporation was false and if such representation was relied upon by the plaintiff as an inducement to the contract, he was entitled to rescind, whether any actual damage accrued by reason of the misrepresentation or not. On the contrary, defendant requested instructions which predicated plaintiff's right of recovery on the fact that the representation was false and that he had suffered material damage by reason of such false representation. All of these instructions were refused by the trial court, so that the only question at issue is whether a rescission of a contract is warranted for fraudulent representations inducing it, where no actual

damage is occasioned by such deceit. In 1 Story, Equity Jurisprudence (13th ed.), sec. 203, it is said: "And in the next place the party must have been misled to his prejudice or injury; for courts of equity do not, any more than courts of law, sit for the purpose of enforcing moral obligations or correcting unconscientious acts, which are followed by no loss or damage. It has been very justly remarked, that to support an action at law for a misrepresentation there must be a fraud committed by the defendant, and a damage resulting from such fraud to the plaintiff. And it has ben observed with equal truth by a very learned judge in equity, that fraud and damage coupled together will entitle the injured party to relief in any court of justice." In Bispham, Principles of Equity (6th ed.), sec. 217, it is said that "fraud without damage is no ground for relief at law or in equity." Again, in 2 Pomeroy, Equity Jurisprudence (3d ed.), sec. 898, the rule is laid down that "the party must suffer some pecuniary loss or injury as the natural consequence of the conduct induced by the misrepresentation. In short, the representation must be so material that its falsity renders it unconscientious in the person making it to enforce the agreement or other transaction which it has caused. Fraud without resulting pecuniary damage is not a ground for the exercise of remedial jurisdiction, equitable or legal; courts of justice do not act as *mere* tribunals of conscience to enforce duties which are *purely* moral. If any pecuniary loss is shown to have resulted, the court will not inquire into the extent of the injury." In 14 Am. & Eng. Ency. Law (2d ed.), p. 140, it is stated: "Relief or redress will not be granted, either by way of rescission or by way of damages, at law or in equity, if it clearly appears that the party complaining has not sustained any pecuniary damages, nor been otherwise put in any worse position than he would have occupied if there had been no fraud; but when we go beyond this broad proposition we meet with difficulties, and find some conflict in the decisions." While, as suggested in

the authority last quoted, there is some diversity of opinion in the adjudged cases as to the nature of the damages which will warrant a rescission of a contract, the very great weight of authority, however, is in line with the text writers above quoted on the proposition that it must be an actual pecuniary damage, as distinguished from a nominal or theoretical injury.   The rule in this state seems to be in harmony with the strong current of authority on this question. *American Building & Loan Ass'n v. Bear*, 48 Neb. 455, was an action for the rescission of a contract of purchase of shares of stock of the association.   The misrepresentations relied upon were as to the management of the corporation by well known and eminent citizens of Iowa and Minnesota.   In determining the question of the right of rescission, POST, C. J., said :

"False representations as the basis of an action, whether for damages or for the rescission of a contract, are such only as in some manner actually mislead the complaining party to his damage.  'A statement made with intent to defraud a subscriber, but without that effect, is immaterial; mere intent without damage is insufficient.'   1 Cook, Stock and Stockholders (3d ed.), sec. 149. See, also, *Keller v. Johnson*, 11 Ind. 337; *Robertson v Parks*, 76 Md. 118; *Wainwright v. Weske*, 82 Cal. 193."

This decision is in harmony with the holding in *Lorenzen v. Kansas City Investment Co.*, 44 Neb. 99, and is fully supported in principle by our later holding in *Gerner v. Yates*, 61 Neb. 101.

It follows from the above stated principles that the trial court erred in excluding the evidence offered by the defendant, and in giving paragraphs No. 5 and No. 7 of instructions above set out.   We therefore recommend that the judgment of the district court be reversed and the cause remanded for further proceedings.

AMES and EPPERSON, CC., concur.

By the Court:   For the reasons given in the foregoing

opinion, it is ordered that the judgment of the district court be reversed and the cause remanded for further proceedings.

REVERSED.

The following opinion on rehearing was filed October 18, 1906. *Judgment of reversal adhered to:*

1. Contract: FRAUD: RESCISSION. A purchaser of real or personal property is entitled to the benefit of his bargain, in other words. to receive the identical property purchased; and where the vendor by fraud or false representations has conveyed to him or induced him to accept something not contemplated by his contract, he may rescind the sale and recover what he has paid, without showing that he has sustained any pecuniary injury or damage thereby.

2. ———: RESCISSION: EVIDENCE. Where, however, a purchaser receives what he actually purchased, and bases his right to rescind on some false representation as to its quality, condition, or matter affecting its value, he must show that such representation was material, and that he was misled thereby to his injury and damage. ·

3. Former conclusion, *Jakway v. Proudfit, ante,* p. 62, adhered to.

BARNES, J.

When this case was before us the first time it was considered by Department No. 2 of the Commission. An opinion was prepared by Judge OLDHAM, and adopted by the court, reversing the judgment of the court below. *Jakway v. Proudfit, ante,* p. 62. A rehearing was ordered, and the case has been presented to the court both upon printed briefs and oral arguments. The defendant in error in an able, comprehensive and exhaustive brief contends that our former opinion is wrong; that the rule there announced that "false representations as the basis of an action, whether for damages or for the rescission of a contract, are such only as in some manner actually misled the party to his damage," is opposed to the great weight of authority, and should not be adopted in this jurisdiction. Many cases are cited and quoted from to

sustain this contention, and it appears that there are two lines of decisions in this country, one holding that to justify a purchaser in rescinding his contract and suing to recover the price paid for the thing purchased, it is not necessary for him to show that he has sustained an actual pecuniary loss by reason of the false representations, and the other holding that the false representations must have been material, and have misled the purchaser to his injury and damage. An analysis of the cases shows that, although there seems to be a conflict between them, yet, as a matter of fact, no such conflict exists, and they can easily be harmonized. In the first class of cases the holding is based on the rule that the purchaser is entitled to have the thing actually purchased. A pertinent illustration of this rule is found in *Hansen v. Allen*, 117 Wis. 61, where it is said:

"It is enough to say that the plaintiff was entitled to have the particular piece of timbered land with a stream of water upon it which had been pointed out to him, and for which he actually contracted, instead of a different piece of land situated at some other place."

Again, in *Bristol v. Braidwood*, 28 Mich. 191, where the defendant purchased a team of horses of the plaintiff, for which he gave a note of a third party, which he represented was secured by a first mortgage, and it appeared that the representation was false, the note being in fact secured by a second mortgage, it was held that the plaintiff was entitled to have what he bargained for, that is to say, a note secured by a first mortgage. We think these cases are sufficient to illustrate the rule that the purchaser is entitled to the benefit of his purchase, and is not obliged to accept something he did not buy. With this rule we are in strict accord, and believe it to be in line with the great weight of authority in this country. Now, if the facts in the case at bar bring it within this rule, then the plaintiff was entitled to recover, and our former opinion should be reversed. It seems to us, however, from a careful examination of the record, that the

defendant in error has not brought himself within this rule. He purchased stock of the Lincoln Incubator Company, and obtained the thing he purchased. The question, then, is whether the alleged false representations were material, and misled him to his injury and damage. The record discloses that the defendant was seeking an investment, and to that end first approached one F. W. Brown, who was a stockholder and officer of the corporation; that he sought and obtained from Brown information as to the financial standing and condition of the company, together with the nature and extent of its business; that he disclosed to Brown his intention to purchase an interest in the company and finance its affiairs, if he could obtain such an interest as he desired; that he was informed by Brown, and other officers of the corporation with whom he talked, that, perhaps, Jakway would sell his stock. Thereupon he spent several days investigating the books and the affairs of the corporation to ascertain its financial condition, and was told that the debts of the corporation did not exceed some $600 or $800. He also ascertained the substantial truth of this statement by an examination of the books, from which he claims to have made a memorandum statement. Thereupon he visited Jakway, and asked him what he would take for his stock in the corporation. He first offered Jakway $1,500 for his holdings, which was refused. He then offered him $1,800, which was also refused. Jakway then told the defendant that he would take $2,000 for his stock. Defendant said he would give it, and they agreed to meet at noon of that day, at the office of the corporation, for the purpose of closing the deal and having the stock transferred on the books of the company. The foregoing facts are undisputed. When they met at the office of the company defendant claims that he exhibited his memorandum to Jakway, and asked him if it was correct, and he testifies that Jakway told him it was. On the other hand, Jakway swore that he never made any such statement; that he did not know the financial condition of the com-

pany or the amount of its debts, because he was not the bookkeeper, and knew no more about it than was known by the defendant himself.

As to the allegation that Jakway represented that there had been paid into said corporation, upon certain stock, the sum of $1,000 in cash, when, in truth and in fact, the purchaser of said stock had not paid the sum of $1,000 in cash, but had given his promissory note to said corporation for the same, which note said corporation had indorsed, sold and discounted at the Columbia National Bank of Lincoln, Nebraska, no evidence was introduced to support it.  On the other hand, it appears that Proudfit, as soon as he obtained possession of the Jakway stock, became very active in the company's affairs; that in about a week thereafter he claims to have ascertained the fact that one L. W. Garoutte had purchased $1,000 worth of stock of the corporation; had given his notes, amounting to $1,000, in payment therefor; that the notes were indorsed by the company and sold to the Columbia National Bank, for which it received the sum of $1,000 in cash.  He testifies that when he discovered this fact he was dissatisfied; that he informed the directors of the company that the matter must be fixed up.  It appears that in answer to such demand Jakway was sent for, who agreed to take up the notes, and relieve the corporation of any possible contingent liability thereon.  It appears that this arrangement was satisfactory, and was carried out in due time; that in accordance with his demands he was elected a director and treasurer of the corporation, which office was formerly held by Jakway; that he proposed to go forward and finance the concern in accordance with his original plan, if matters could be arranged to his satisfaction.  He testified in part as follows:

"I told them that everything had to be cleared up, so it would be to my entire satisfaction in every respect.  I positively said I would not continue with the company, except on condition that everything was cleared up, and to my satisfaction.  Q. What were the things particularly

that you insisted on that should be cleaned up before you proceeded with the company? A. The main issue was the Garoutte notes. Q. Was there anything else involved? A. There was a receipt that did not look clear to me at the meeting at the Capital Hotel. Q. Relating to the McCarthy stock? A. Yes, sir. Q. Was there something in connection with that that you insisted on being cleaned up? A. Yes, sir."

Cross-examination: "Q. You were present when you were elected a director, weren't you? A. Yes, sir. Q. And present when elected treasurer? A. Yes, sir. Q. And wasn't one of the conditions you made as to going on with the company, and advancing $5,000 of your money, and procuring $10,000 more to promote this enterprise, that you should also be manager of the business of the company? A. It was the condition that I should know all about its business. Yes, sir. Q. Didn't you insist, also, that you would be business manager of the company in McCarthy's place, and that McCarthy should resign his place? A. No, sir. I don't know that I did. Q. Who would know, if you don't—these people who have testified before about it? Who do you think would know, if you don't know? A. I wanted it all cleaned up, and new officers elected, and everything of the kind. Q. You wanted to be elected manager didn't you? A. I certainly wanted to have some voice in the matter."

From this evidence it seems reasonably clear that defendant was not dissatisfied with the condition he ascertained to exist in reference to the Garoutte notes, but rather with his inability to secure the entire management of the corporation to himself. Again, it seems to us that, if it be conceded that the evidence shows that Jakway stated that the financial condition of the company was, as disclosed by the memorandum, made by defendant, such representation was substantially true. We are of the opinion that this case should be ruled by *American Building & Loan Ass'n v. Bear*, 48 Neb. 455. The opinion in that case is an able and exhaustive one, and

correctly states the rule of law which should be applied in cases where, as in the case at bar, the buyer obtains the thing purchased, and is compelled to rely for his right to rescind on false representations as to matters affecting its quality, condition or value. In such cases, the party must have been misled to his injury or damage. To hold otherwise would enable a purchaser to rescind his contract for any misstatement of the vendor, however trivial. We would thus overturn the ordinary and well-established rules governing the purchase and sale of property of all kinds.

It seems clear to us that the conclusion arrived at by our former opinion is sound and should be adhered to.

JUDGMENT ACCORDINGLY.