WILLIAM HORN, APPELLANT, v. LYSLE I. ABBOTT, APPELLEE.

FILED NOVEMBER 17, 1916. No. 18952.

1. Evidence examined, and found to sustain the finding and judgment of the district court as to the appellee, Lysle I. Abbott.

2. Corporations: SALE OF BONDS: FRAUD. Where a suit in equity was brought against certain defendants in the district court for Douglas county alleging misrepresentations as to the value of certain bonds in a corporation, and the evidence showed that these defendants were all stockholders, directors and officers of the corporation, and that the representations were made to induce the purchase by the plaintiff of said bonds of the corporation owned by one of these defendants, and that the sale was made by the owner of said bonds and the bonds delivered, but there was no evidence that the appellee had made any representations to the plaintiff concerning the

value of the property of the corporation or the value of the bonds, and he had no interest in the sale, he will not be held liable, although he had been elected president of the company; there being no showing that he was in any way derelict in his duty.

APPEAL from the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Affirmed.*

*Carroll J. Lord,* for appellant.

*I. J. Dunn* and *Ray J. Abbott, contra.*

HAMER, J.

Appeal from the judgment of the district court for Douglas county against the plaintiff, William Horn, and in favor of Lysle I. Abbott, in a suit in equity in which said William Horn was plaintiff and Lysle I. Abbott, Fritz Jaeggi, Arnold Koenig and the Niobrara Investment Company were defendants. There was a judgment in favor of the plaintiff, William Horn, and against Fritz Jaeggi, Arnold Koenig and the Niobrara Investment Company.

The defendants, Jaeggi, Koenig and the Niobrara Investment Company did not appeal. The plaintiff in his petition alleged that Lysle I. Abbott, Fritz Jaeggi and Arnold Koenig were the directors and officers of the Niobrara Investment Company, of which Lysle I. Abbott was then alleged to be president, and Arnold Koenig vice-president, Fritz Jaeggi secretary and treasurer. It was also alleged in said petition that the said Niobrara Investment Company was a corporation; that on the 20th day of January, 1911, the said plaintiff, William Horn, was induced to purchase five $1,000 first mortgage gold coupon bonds of the Niobrara Investment Company from the said corporation; that the said plaintiff relied upon the general representation of the officers and directors of said corporation, and the printed statements contained in a prospectus issued and circulated by said corporation, and which it is contended undertook to state that the said bonds were amply secured by a first mortgage upon several thousand acres of the finest Nebraska farm land

owned by said company at that time; that, as a matter of fact, the corporation did not own any farm land in the manner represented by the directors of said corporation and as contained in its printed prospectus; that, as a consideration for the purchase of said bonds, said plaintiff paid to the corporation aforesaid in cash $1,000, and entered into a written contract to convey to said corporation by a good and sufficient deed a quarter section of land situated in Kimball county, Nebraska, and then belonging to the plaintiff; and that the said bonds, when said contract was entered into and at the time of bringing said suit, were without value of any kind. The plaintiff prayed that the entire contract between himself and the Niobrara Investment Company should be rescinded; that the contract for the transfer of the land in Kimball county to the corporation be set aside and held to be null and void; and that the plaintiff recover judgment against each of the defendants for the sum of $1,000, paid to said corporation, together with interest thereon from the date of payment.

The defendants Lysle I. Abbott, Fritz Jaeggi, Arnold Koenig and the Niobrara Investment Company each filed separate answers, admitting the existence of said corporation, the names of those composing its board of directors, and the officers of said corporation, and that a contract was entered into between the plaintiff, William Horn, and the corporation, the Niobrara Investment Company. There was an admission of the issuance of a prospectus by the said Niobrara Investment Company. The answer of the defendants denied that the plaintiff, in the purchase of the bonds, relied upon the statements contained in the prospectus, and each defendant separately alleged that the plaintiff made the purchase on his own independent inquiry and judgment.

The plaintiff filed a reply to each of these answers, in which he alleged that he purchased the bonds relying solely upon the statement contained in the prospectus issued by the corporation, the Niobrara Investment Company, and

upon the representations made by the directors and officers of such corporation as to the assets of the said company.

On the trial, the court entered up a decree finding that the plaintiff was entitled generally to relief as prayed for in his petition against the defendants Arnold Koenig, Fritz Jaeggi and the Niobrara Investment Company, but that the said plaintiff was not entitled to any relief as against the defendant Lysle I. Abbott; that the entire contract be rescinded and held for naught; and that the costs be taxed against the defendants Fritz Jaeggi, Arnold Koenig and the Niobrara Investment Company.

Counsel for the defendant, Mr. I. J. Dunn, makes the contention that the suit is brought in equity to rescind a contract made between the plaintiff and the defendants other than Abbott. Abbott testified that he drew the articles of incorporation as a lawyer; that up to that time he knew nothing of the Niobrara Investment Company; that Koenig and Jaeggi came to his office together to have him draw the articles of incorporation, and that he knew nothing of the proposed corporation; that he had been Koenig's attorney for a long time; that he (Abbott) took the legal steps necessary to organize the corporation; that Koenig said that he had never paid Abbott anything for his services and wanted to pay him in stock of the company. Abbott testified that he had given the corporation no consideration, except what was necessary to draw the papers, and that he knew nothing about the corporation. He appears to have known nothing about the proposed corporation, except what Koenig and Jaeggi told him. He said that he had not had anything to do with preparing the facts and statements that went into the prospectus, and had no information, except as he had received it from Koenig and Jaeggi. Abbott testified that he did not have anything to say to Mr. Horn, the plaintiff, and had no personal acquaintance with him. He did not know Mr. Horn, and did not know that he had any intention of investing in the company. This does not seem to be denied. Abbott testified that he had not attended to the

printing of the prospectus, and that Mr. Jaeggi attended to it and furnished the money. Jaeggi knew that the company held contracts for the purchase of the land. Horn testified that he met Mr. Koenig at the La Salle hotel, Chicago, and that Koenig told him that everything was going fine, and said that if he (Horn) knew anybody that would like to invest in the Niobrara Investment Company he would like to meet him; that thereupon he and Koenig went to see the president of the Standard Underground Cable Company, a fifty-million dollar concern, and that he introduced Koenig to the president of the company; that the gentlemen then talked about their work, and that Koenig then talked of the big feature of the Niobrara Investment Company, that they owned the land, that they had it under contract, that they would develop water power for electricity; that Mr. Koenig also talked to a Mr. Klein along the same line; that Mr. Klein said to him (Horn) that the way Koenig talked Horn could not make a mistake in investing his money in the company; that Koenig then said to Klein that the company owned the land under contract; that the increase in value over the price paid should go into a power proposition and into the banking business, hotels, and such assets as might accrue out of the surplus of the land holdings. Horn appears to have testified that he introduced a Mr. Heidbrink to Mr. Jaeggi, and that Jaeggi then said that he would attend to the business. A letter dictated by Mr. Jaeggi and signed by Mr. Horn with the name of the Niobrara Investment Company and addressed to Mr. Heidbrink at Stayes, South Dakota, was introduced in evidence. Exhibit 23, offered by plaintiff, Horn. Heidbrink was the last person they tried to interest in the company. Exhibit 23 shows that Horn was no infant, and that he had a seductive way about him that might have won a most wary capitalist. The charm of the letter is its apparent clearness of vision and knowledge of the conditions of the venture obtained at first hands. Horn seems to have known all about the certainty of the enterprise, and therefore

did not need to obtain information from Abbott, or to rely upon any sort of assurance that Abbott's name as president might carry with it. He invites Heidbrink to "look into matters thoroughly." He wants Heidbrink to "take part in the development of this country"—only wants Heidbrink "to join us in this great undertaking with the small amount of $20,000." He is also willing that, in addition, Heidbrink shall "take interest in the national bank which we are going to build in Niobrara." He predicts that he and Heidbrink in two years "will be members of the biggest concerns in the West," and winds up by saying that "our undertaking has even created interest in the commercial clubs of Nebraska, and we are sure of their support." Horn shows up as a promoter. Horn swore in an affidavit in the case of Irene Horn against himself that he did not have $1,000 in the bank; "that the only bank he does business with is the City National Bank, Omaha, in which he has not to exceed the sum of $43; and that affiant has no cash or other property, real or personal, or other income, except as herein stated." Afterwards in this case he testified that he swore to this affidavit without knowing what was in it; that he had not read it or any part of it. On cross-examination, as we understand it, he admitted that he had $1,000 in the bank. This testimony is perhaps immaterial, except as it tends to discredit the defendant and to establish the fact that he is unworthy of belief. Of course, he may have been attempting to place some property beyond the reach of his former wife. She had a judgment against him. This affidavit is not commendatory of Mr. Horn. It leaves him liable to the charge that his hands are unclean and contains a suggestion that he should keep out of court. *Coppell v. Hall,* 7 Wall. (U. S.) 542; *McMullen v. Hoffman,* 174 U. S. 639.

The mere fact that Abbott was president of the corporation did not bind him to so manage the corporation as to make money for the stockholders or for the company itself. Nor is there any liability attaching to Mr. Abbott because his name appears as president of the corporation.

*Nunnelly v. Southern Iron Co.,* 94 Tenn. 397, 28 L. R. A. 421.

The representations to Horn concerning the ownership of the land at the time of the deal with Horn were made by Jaeggi and Koenig. Abbott said nothing and was not present when they talked to Horn. If the representation that they had bought 2,500 acres more was made by Jaeggi and Koenig without Abbott joining in it in some way, then he was not liable in any event. Horn testified that he believed the statements of Jaeggi and Koenig. If he believed them, he had no occasion to rely upon Abbott.

Horn never talked to Abbott or made an independent inquiry. Jaeggi delivered the shares of stock to Horn. He was, and is, the owner. The stock appears to be Jaeggi's stock. Of course, Abbott was not in any way bound to make Jaeggi's stock pay. Nor was he responsible in any way for the exaggerated ideas or expressions of Mr. Jaeggi or Mr. Koenig. He did not compare with either of them in any way. He had been Mr. Koenig's lawyer. He was merely helping with the preparation of the articles of incorporation. He had no designs upon the pocketbook of Mr. Horn or upon the pocketbook of any other person.

The plaintiff does not seem to have talked with Mr. Abbott concerning the property, and Jaeggi seems to have been rather active. According to the plaintiff, Mr. Jaeggi showed him "a safe full of stocks and bonds, and told him that was just part of them, the rest of them was with the Peters Trust Company." Mr. Horn also testified: "Mr. Jaeggi told me that over $30,000 worth (of bonds) had been already sold and paid for at that time. * * * He told me that the company is immense. * * * He told me they had already sold over $30,000 worth of gold bonds; that he would float a couple of hundred thousand dollars worth of them in Europe, get foreign people in on the deal."

Horn seems to have placed a great deal of confidence in both Jaeggi and Koenig. He knew them both, and they

both talked to him, according to his testimony, in such a way as to inspire confidence, if he believed them. On Mr. Horn's cross-examination he was asked: "Did anybody lead you to believe, or did anybody say to you, that Abbott as an officer of the company would be in any way liable for its debts and obligations? Did anybody say that to you or lead you to believe that? A. There was never such conversation. Q. Did you think Mr. Abbott, even if he was a stockholder, or officer, was or would become liable for the debts or obligations of this company, or to make it good? A. It never entered my mind."

That Horn's testimony when he testified against Abbott is unworthy of belief is in a measure established by the fact that he never went to see Abbott or complained to him in any way. "Q. After you became suspicious that Jaeggi and Arnold Koenig hadn't told you the truth, did you go to see Abbott? A. No, sir. Q. Did you ever call him up? A. No, sir. Q. Did you ever consult him about your savings, or the deal you had made, after you became suspicious? A. No, sir."

Whether any false representations were made by Abbott to the plaintiff would be material if it was charged and proved. But it is not. The plaintiff is not shown to have relied upon any representation that Abbott made. He appears to have relied upon his own judgment and the representations of Koenig and Jaeggi.

Under section 8198, Rev. St. 1913, we are called upon to render our judgment in this case *de novo.* *Northwestern Mutual Life Ins. Co. v. Mallory,* 93 Neb. 579.

There is no proof that Horn relied upon anything that Abbott told him, if, as a matter of fact, Abbott told him anything, which is not shown.

In order to maintain an action for deceit, it is necessary to show that the plaintiff had a right to rely upon the representations made, if any, and did rely upon the same, and that they were false, and that he altered his condition in consequence thereof and suffered damages thereby. *Runge v. Brown,* 23 Neb. 817.

In the above case of *Runge v. Brown,* it was said in the body of the opinion: "But there is no proof that the representations alleged to have been made by plaintiff in error were relied upon by defendant in error, and induced him to make the sale referred to. Upon this point we think the authorities are substantially all one way. If defendant in error sold the sheep to Musheid, upon his own judgment, and wholly uninfluenced by the alleged statements of plaintiff in error, it is clear that such statements could not result in damages to him, however untrue they might have been, unless they were relied upon by defendant in error, and that, so relying, he sold the sheep, received the notes, and suffered damage thereby. It must appear that, relying upon the statements, he altered his condition, and was damaged thereby, that this change in his condition was in consequence of the representations, as well as that the representations were untrue."

In *Stetson v. Riggs,* 37 Neb. 797, this court held, as stated in the body of the opinion: "The defense of Riggs was, in effect, an action against Stetson for damages for false representation made by the latter. This answer, then, to be good, must allege with reasonable certainty: (a) That Stetson made some representation to Riggs, meaning he should act on it; (b) that the representation made was false; (c) that Riggs believed such representation to be true, relied and acted upon it, and was thereby damaged"—citing *Byard v. Holmes,* 34 N. J. Law, 296, and cases there cited.

"False representations as the basis of an action, whether for damages or for rescission of a contract, are such only as in some manner actually mislead the complaining party to his damage." *American Building & Loan Ass'n v. Bear,* 48 Neb. 455.

"Actionable fraud must relate to matters material to the transaction involved. Mere collateral inducement, although fraudulently made, of itself affords no ground for the rescission of a contract, or for the recovery of damage

against the offending party." *American Building & Loan Ass'n v. Bear,* 48 Neb. 455.

We also refer to *Jakway v. Proudfit,* 76 Neb. 62, where this court held, as stated in the body of the opinion, that an instruction was prejudicially erroneous which "submitted the case to the jury on the theory that, if the representation of the indebtedness of the corporation was false, and if such representation was relied upon by the plaintiff as an inducement to the contract, he was entitled to rescind, whether any actual damage accrued by reason of the representation or not."

Also, see *Lorenzen v. Kansas City Investment Co.,* 44 Neb. 99, where this court held, as stated in the syllabus: "In an action in the nature of an action of deceit, it is necessary not only to show the making of false representations justifiably relied upon, but in addition it must be made directly and not by conjecture to appear that, from such false representations and reliance upon them, there resulted a direct and actual loss to plaintiff."

In 1 Story, Equity Jurisprudence (13th ed.) sec. 203, it is said: "And in the next place the party must have been misled to his prejudice or injury; for courts of equity do not, any more than courts of law, sit for the purpose of enforcing moral obligations or correcting unconscientious acts, which are followed by no loss or damage. It has been very justly remarked, that to support an action at law for a misrepresentation there must be a fraud committed by the defendant, and a damage resulting from such fraud to the plaintiff."

In Bispham, Principles of Equity (8th ed.) sec. 217, it is said: "Fraud without damage is no ground for relief at law or in equity."

See, also, the following cases: *Taylor v. Guest,* 58 N. Y. 262; *White, Adm'x, v. Smith,* 39 Kan. 752; *Humphrey v. Merriam,* 32 Minn. 197; *Clark & French v. Tennant,* 5 Neb. 549.

The bonds purchased by the plaintiff seem to have been the property of Jaeggi, and a bargain with Jaeggi was not

a bargain with the Niobrara Investment Company, nor was it a bargain with Abbott.

Any fraudulent representations made by Jaeggi or by Jaeggi and Koenig were not the representations of Abbott.

1. The plaintiff, as to the defendant Abbott, is not shown by the evidence to have been misled or in any way deceived by the prospectus or by anything that was said or done by the defendant Lysle I. Abbott.

2. The defendant Abbott is not shown to have been in the management of the affairs of the company.

3. Horn seems to have known that Jaeggi and Koenig were the real parties in interest, and that they were in the actual control of the corporation, and that the defendant Abbott was only assisting them as counsel, and that what he did was done as a lawyer, and not otherwise.

4. Horn relied upon the facts within his own knowledge.

5. Under the relations existing between Horn, Jaeggi and Koenig, as shown by the evidence, Horn must have known that Jaeggi and Koenig were the real parties in interest and in control of the corporation.

6. The testimony of the defendant Lysle I. Abbott does not appear to be successfully controverted. He seems to be free from any fraudulent purpose or act. We are unable to hold that the plaintiff, Horn, has established the case set up by him in his petition.

The judgment of the district court appears to be sustained by the evidence, and it is

AFFIRMED.

SEDGWICK, J., not sitting.