ALICE M. COOPER, APPELLEE, v. MARIE MARR ET AL.,
APPELLANTS.

30 N. W. 2d 563

Filed January 16, 1948.    No. 32252.

*Hotz & Hotz* and *William J. Hotz,* for appellants.

*Donovan & Frohm,* for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE,
YEAGER, CHAPPELL, and WENKE, JJ., and TEWELL, District
Judge.

WENKE, J.

This action was commenced in the district court for
Douglas County by Alice M. Cooper, as plaintiff.  The
purpose of the action is to rescind a contract of pur-
chase of a "Rooming House Business, together with the
furniture, household goods and furnishings" and to re-
cover the purchase price.  From a verdict in favor of the
plaintiff, their motions for new trial and for judgment
notwithstanding the verdict having been overruled, the
defendants Marie Marr and E. Ray Marr have appealed.

For convenience and clarity the parties will be referred
to as they appeared in the lower court.  The evidence
discloses that the defendants, Marie Marr and E. Ray

Marr, are husband and wife and the same persons as Marie O. Marovish and Eugene Ray Marovish. They will be referred to as defendants except where referred to individually, then their proper names will be used.

The property purchased by plaintiff consisted of a rooming house business together with the furniture, household goods, and furnishings, a detailed inventory of which was attached to the bill of sale. It will be herein referred to as the rooming house business.

There is no serious controversy in the testimony except as to the representations of the sellers' cost. On that conflict the jury decided in favor of the plaintiff and we are controlled on that question thereby.

The record discloses the following: Plaintiff, a widow 68 years of age, lived at Alliance, Nebraska, where she had her home before coming to Omaha to live May 24, 1945. She had been in business for a number of years which, at the time, was a restaurant located at Overton, Nebraska. Due to the condition of her health she had been advised to move to a lower altitude and decided to move to Omaha for that purpose. In order to make a living she decided to buy a small rooming house business. She noticed an advertisement of Mr. Gangestad in the Omaha World Herald advising that he had several rooming house businesses for sale. On April 23, 1945, she came to Omaha and went to his office. She advised him of her purpose and that she had between four and five thousand dollars to put into the business.

Mr. Gangestad was an Omaha realtor who had been in that business for over 40 years. He had listed the rooming house business of the defendants, which was located at 2224 Howard Street in Omaha, at a price of $4,250. He took the plaintiff to that address and there she met the defendant Marie Marr. Plaintiff, in conjunction with Marie Marr and Mr. Gangestad, or one of them, fully inspected the rooming house and discussed its operation with Marie Marr. It was while examining the property that the plaintiff testifies Marie Marr told

her what the business had cost. As to these representations the plaintiff testified as follows: " 'You are getting a good buy, but you look over things. We paid $6,000 for the property and business,' but * * * due to the cafe and other work that she would sacrifice the place for $4,250." She said they paid $6,000 a year ago.

Plaintiff and Mr. Gangestad then returned to Mr. Gangestad's office where she entered into a contract for the purchase of the business for the sum of $4,250. She paid $750 of the purchase price at that time. The contract provided it was to be fully closed within 31 days. Plaintiff immediately returned to Alliance and then proceeded to sell her home, her business, and some of her personal property. On May 24, 1945, she returned to Omaha and went immediately to 2224 Howard Street and stayed there. The next day she closed the deal and paid the balance of $3,500 and received a bill of sale, with a detailed inventory attached. She did not take possession, for the purpose of running the business, until June 1, 1945, although she lived in the house. The defendants also continued to live there until about June 14, 1945, when they were able to find another place to live. On June 1, 1945, the plaintiff's daughter, Ethel Cooper, who was about 35 years of age, came to live with plaintiff. She helped her mother run the business as her mother was not very well. There is no evidence to show that plaintiff did not get the business she thought she was getting. The evidence shows she had been given ample opportunity to examine it and that she did so; that she got exactly what she bargained for and she makes no complaint in regard thereto. When plaintiff was asked: "Did you say anything to the Marrs at any time that you were dissatisfied with the purchase?" She replied: "No, it was not that I was dissatisfied with it, it was on account of my health, I got sick." The evidence, without dispute, shows the plaintiff received the identical business and property that she inspected and purchased.

About October 31, 1945, the plaintiff was informed

that Marie Marr had not paid $6,000 for the rooming house business but in fact had paid only $1,650. The evidence shows that when Marie Marr purchased the business from Mrs. Pierce, taking possession thereof on February 1, 1944, she paid $1,650. However, Mrs. Pierce reserved the right to and did remove therefrom sufficient of the furnishings and furniture to furnish a five-room house. Defendants offered evidence to prove that they spent over $2,000 to replace the furniture and furnishings thus removed. This offer, upon objection thereto by plaintiff, the court rejected. We find the court erred in so ruling but, in view of our holding as to the plaintiff's rights, this ruling becomes immaterial.

After discovering that Marie Marr had misinformed her of what the business had cost, the plaintiff served the defendants with a notice, dated November 6, 1945, of her election to rescind. This notice contains the following: "You are further notified that said fraud, deceit and misrepresentations included a representation that you purchased said property for the sum of $6000.00 whereas, in truth and in fact, you purchased said property included in said contract of purchase entered into with the undersigned, for the sum of $1650.00. Said false representations further consisted of representations by your agent, E. G. Gangestad, to the effect that the sum of $4250.00 was a fair and reasonable price for said property and represented the fair market value of said property."

Thereafter, on November 14, 1945, this action was commenced. Plaintiff alleges, as a basis for her action to rescind, as follows:

"V. Plaintiff further alleges that on the 23rd day of April, 1945, said defendant, Marie Marr, accompanied by the said E. G. Gangestad, took the plaintiff to 2224 Howard Street, Omaha, Nebraska, and showed the plaintiff the said furniture, household goods and furnishings to be included in said Rooming House Business which was at said time and place offered to the plaintiff for

the sum of Four Thousand Two Hundred Fifty Dollars ($4250.) That at said time, and on the third floor of said frame building in which said furniture, household goods and furnishings were located, being No. 2224 Howard Street, Omaha, Nebraska, the said defendant, Marie Marr, represented to and told the plaintiff that she and her husband, defendant, E. Ray Marr, paid Six Thousand Dollars ($6000.) in cash for the said Rooming House Business, which included the furniture and household goods and furnishings then in said rooms at 2224 Howard Street, but that they were required to sell said property at a loss for the reason that they were engaged in the Restaurant Business and were unable to find help to operate the said Rooming House Business. Said defendant, Marie Marr, at said time told the plaintiff that other parties were waiting to purchase said property for said Rooming House Business at said price, and that the plaintiff would have to decide immediately if she wanted to get in the Rooming House Business; that it was an opportunity that she could not afford to miss, as she was getting the property at a bargain price. Immediately after these representations were made to the plaintiff by the said Marie Marr, and after the plaintiff went down to the main floor of the building, she asked the said Gangestad if he thought that $4250 was a fair and reasonable price for said Rooming House Business, and the said Gangestad assured the plaintiff that she was getting a good buy and that the business being offered her was well worth the price asked.

"VI. Plaintiff further states that on the 23rd day of April, 1945, she was a non-resident of the City of Omaha, being a resident of Alliance, Nebraska, at said time; that plaintiff had no knowledge of any kind whatsoever as to the value of a Rooming House Business in the City of Omaha and the value of furniture, household goods and furnishings used in connection therewith, all of which was known to the said defendants and to the said Gangstead at said time. Plaintiff further states that she relied

solely upon the representations and statements of the said Marie Marr and the said Gangestad with reference to the value of said Rooming House Business before entering into said purchase agreement above referred to, marked Exhibit A, and attached hereto. Plaintiff also states that she believed implicitly in the statements made to her by the defendant, Marie Marr, that she and her husband had paid $6000 cash for said Rooming House Business and the furniture, household goods and furnishings which they were then offering to sell to this plaintiff for the sum of $4250.

"VII. Plaintiff further alleges that the said representation made to this plaintiff by the said Marie Marr, that she and her husband had paid $6000 cash for the same identical Rooming House Business, including the furniture, household goods and furnishings which said defendants were offering to sell to the plaintiff for the sum of $4250, was false and untrue and were known to be false and untrue by the said defendants and each of them at the time that said representation was made to the plaintiff by the said Marie Marr, as aforestated. That the said representations and statements made to the plaintiff by the said E. G. Gangestad, as aforestated, were false and untrue and were known by the said Gangestad to have been false and untrue at the time same were made to this plaintiff.

"VIII. That plaintiff relied upon each and all of said representations and statements made to the plaintiff by the said defendants and the said Gangestad, and believed each and all of said representations to be true at the time they were made. Plaintiff further states that had she known that any of said representations were untrue, that she would not have entered into said purchase agreement."

Plaintiff testified as follows: "Q- Well, what was wrong, when you discovered what was wrong? A- I did not say anything about there being anything wrong. Q- Well, as far as your complaint is, the only complaint that you

have, is that you say that Mrs. Marr told you that she paid $6,000 for the rooming house sometime previous when she bought it, is that right? A- Yes."

As to the question of the value of the rooming house business which plaintiff received, the record discloses she offered no testimony with reference thereto and her counsel stated her position with reference thereto as follows: "I might say to your Honor, we are getting into something here that is similar to value and certainly the question of value is not involved here at all. We are not complaining about the value, it isn't a question of value. That goes right square to the question of value; it isn't material what the value was."

In accordance with the plaintiff's position, as indicated by her evidence, her counsel's statement of her position and her requested instruction, the court instructed the jury on the issues of the case as follows:

"Before the plaintiff will be entitled to recover a verdict at your hands, she must establish by a preponderance of the evidence relating thereto, that the defendant, Marie Marr, told her during the negotiations and before she concluded to buy the business, furnishings and fixtures which she afterwards bought of the Marrs, as follows:

"(1) That sometimes previously they, themselves, had paid $6000 for what they were now willing to take $4250 for because of their business exigencies; and must further prove and likewise establish.

"(2) That the plaintiff believed the statements so made to be true, and by reason of that being so believed, she concluded to buy and did buy the said business, furnishings and fixtures in question, paying the sum of $4250.00 therefor, and that if said statements had not been so made, she would not have concluded to buy or pay the money she did for the property then purchased; and

"(3) And further she must likewise establish that at the time said statements were made by Marie Marr that

the defendants had sometime before bought the property in question for $6000, that said statements were false and known by the said Marie Marr to be false and made for the purpose of inducing the plaintiff to make the purchase in question, and she must further likewise establish that on the discovery of the fact that Defendants had not paid the $6000.00 for the property she had bought of them she denounced the sale and demanded back what she had paid."

It will be observed, from what has been said and quoted, that the plaintiff received the identical property and business which she inspected and purchased and that she was in no way dissatisfied with it and that she made no complaint as to its value. Her sole complaint is that the sellers misrepresented their cost although the plaintiff was not injured or damaged thereby.

We have announced the principles here controlling in our opinion on rehearing in the case of Jakway v. Proudfit, 76 Neb. 67, 109 N. W. 388. There we said:

"A purchaser of real or personal property is entitled to the benefit of his bargain, in other words, to receive the identical property purchased; and where the vendor by fraud or false representations has conveyed to him or induced him to accept something not contemplated by his contract, he may rescind the sale and recover what he has paid, without showing that he has sustained any pecuniary injury or damage thereby.

"Where, however, a purchaser receives what he actually purchased, and bases his right to rescind on some false representation as to its quality, condition, or matter affecting its value, he must show that such representation was material, and that he was misled thereby to his injury and damage."

Since that opinion the Legislature, in 1921, adopted the Uniform Sales Act which contained what is now section 69-412, R. S. 1943. This section reads as follows: "Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if

the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only, shall be construed as a warranty."

We do not think this statutory enactment changes the principles of law as announced in Jakway v. Proudfit, *supra,* and which are here applicable, but affirms them. We have examined the authorities cited by plaintiff and have come to the same conclusion as reached in Jakway v. Proudfit, *supra.* We not only find that Jakway v. Proudfit, *supra,* correctly states the principles here applicable but that it is in accord with most of the holdings cited by plaintiff when the factual situations, as found therein, are considered.

From what has been said it is apparent that the court not only erred in the instruction given but that it erred in overruling the defendants' motion for a directed verdict, both at the end of the plaintiff's case and again at the end of all the evidence.

From an examination of the plaintiff's petition, which we have already set forth in sufficient length, it is apparent that it is subject to the same deficiency as the proof and fails to state a cause of action. We have come to the conclusion that the motion of the defendant for a judgment notwithstanding the verdict should have been sustained and that the verdict and judgment should be reversed and the action dismissed. It is so ordered.

REVERSED AND DISMISSED.

YEAGER, J., dissenting.

I do not disagree with the conclusion of the majority opinion that the verdict and judgment of the district court should be reversed.

It is my opinion, however, that the cause should not be dismissed but should be remanded for a new trial. It appears to me that the issues made by the pleadings which were never redefined either by amendment, trial

order, or by the instructions of the court require a remand rather than dismissal.