WOLLMAN, Circuit Judge.
 

 Marguerite M. Griffin sued the Gering National Bank & Trust Co. (the Bank), claiming that the Bank had made fraudulent misrepresentations to her during negotiations to settle an amount due under a guarantee that Mrs. Griffin had executed for the benefit of her son. The district court
 
 [1]
 
 denied her request for rescission of the settlement agreement, holding that Mrs. Griffin had failed to show damages. We affirm.
 

 Mrs. Griffin’s son, Sam Moore, one of the country’s leading Hereford cattle breeders, operated his cattle business on Mrs. Griffin’s 7,880 acre ranch in Sioux County, Nebraska. In the early 1970’s, Moore entered two cattle business partnerships, the Spur Cattle Co. and the Three-Way Cattle Co. His partner, Joe Huckfeldt, who was then president, stockholder, and director of the Bank, facilitated the partnership financing.
 
 *801
 
 Huckfeldt executed all of the partnership notes, security agreements, and financing statements solely in Moore’s name. The Bank documentation did not distinguish between Moore’s personal and partnership accounts.
 

 In January of 1981, Mrs. Griffin signed a “guarantee of indebtedness” of Moore’s debts. The parties dispute how this document was executed. Mrs. Griffin claims that she signed “a blank sheet of paper,” which she understood was intended to cover only her son’s personal overdrafts at the Bank. Huckfeldt testified that he had delivered a prepared guarantee form to Moore so that the latter could obtain his mother’s signature.
 

 In January of 1982, the Bank requested that Mrs. Griffin as guarantor pay all of Moore’s debts. Mrs. Griffin hired attorney Tom Danehey to negotiate a settlement with the Bank. Danehey inquired whether any partnership debt was included under the guarantee. Henry Rahmig, president of the Bank and Huckfeldt, then chairman of the board and loan officer, both falsely stated to Danehey that the entire indebtedness was Moore’s personal debt and did not include any partnership loans. Additionally, there was nothing in the loan files to indicate to Danehey that part of the loans were partnership debt. Mrs. Griffin and the Bank then negotiated a settlement agreement under which Mrs. Griffin paid $462,500, which was $79,866 less than the deficiency remaining after Moore’s assets were applied to the debt.
 

 This action was tried before the United States Bankruptcy Court for the District of Nebraska
 
 [2]
 
 as a related proceeding in Moore’s Chapter 11 proceeding. The bankruptcy court submitted proposed findings of fact and conclusions of law to the United States District Court, which undertook a de novo review pursuant to 28 U.S.C. § 157(c)(1) (1982). The district court held that Mrs. Griffin had proved all of the elements of fraud except damages. The district court found that Mrs. Griffin had signed a standard guarantee form that obligated her to pay all sums owed by Moore to the Bank, and that because individual partners are liable to creditors for the full amount of partnership debt after the partnership property is exhausted,
 
 Security State Bank v. McCoy,
 
 219 Neb. 132, 361 N.W.2d 514, 515 (1985), Mrs. Griffin had suffered no harm as a result of the misrepresentations.
 
 [3]
 
 Upon Mrs. Griffin’s motion for reconsideration, the district court reviewed the language of the guarantee and found it unambiguous.
 

 On appeal, Mrs. Griffin contends 1) that damages are not a necessary element in an equity action to rescind a contract; and 2) that the district court’s conclusion that the plaintiff was not damaged as a result of the Bank’s fraudulent misrepresentations is clearly erroneous as a matter of fact and as a matter of law.
 

 I
 

 It is well established under Nebraska law that in an equity action to rescind a contract due to fraud the plaintiff must prove that he suffered injury as a result of the defendant’s misrepresentations.
 
 McGinty v. McGinty,
 
 195 Neb. 281, 237 N.W.2d 855, 858 (1976);
 
 Russo v. Williams,
 
 160 Neb. 564, 71 N.W.2d 131, 138 (1955). “False representations, as the basis of an action, whether for damages, or for the rescission of a contract, are such only as in some manner actually mislead the complaining party to his damage.”
 
 American Building & Loan Ass’n v. Bear,
 
 48 Neb. 455, 67 N.W. 500, 501 (1896).
 
 See also Jakway v. Proudfit,
 
 76 Neb. 62, 106 N.W. 1039, 1040 (1906). Although Nebraska law has carved out a narrow exception to the necessity of proving pecuniary damage in cases where the purchaser of real or personal property does not receive the exact property for which he bargained,
 
 Goger v. Voecks,
 
 156 Neb. 696, 57 N.W.2d 621, 624 (1953),
 
 citing Cooper v. Mart,
 
 149
 
 *802
 
 Neb. 211, 30 N.W.2d 563, 567 (1948), this case does not fall within that exception.
 

 Mrs. Griffin contends that she suffered injury when she was misled into foregoing alternative courses of action, arguing that if she had gone to trial she would have defended on grounds of release because of the Bank’s failure to notify her of extensions of time for payment and of the sale of collateral. The district court held, however, that foregoing alternative courses of action does not constitute the requisite type of economic harm under Nebraska law. Mrs. Griffin has cited no authority that would persuade us that the district court’s interpretation of Nebraska law is erroneous.
 

 Mrs. Griffin’s final contention is that if she had known that partnership debt was included in her son’s debts and that the Bank could have looked to Huckfeldt as another source of payment, the settlement amount might have been different. As indicated above, however, the district court found that Mrs. Griffin was obligated to pay the full amount under the terms of the guarantee. Accordingly, any claim that the Bank may have had against Huckfeldt was legally irrelevant to her obligation to pay the full amount of her son’s indebtedness to the Bank, whatever the nature thereof. What claim for contribution Mrs. Griffin may have against Huckfeldt is not before us in this appeal.
 

 II
 

 We next address Mrs. Griffin’s motion for alternative relief on the basis of newly discovered evidence. Mrs. Griffin . has asked us to grant our consent and authorize the district court to assume jurisdiction of an independent action in the event we affirm the judgment. Reasons for requiring leave of the appellate court to commence an independent action include finality of judgments, absence of power in the lower court to change or reverse the mandate of an appellate court, and the rightful concern of the appellate court to protect the integrity of its judgments.
 
 Geuder, Paeschke & Frey Co. v. Clark,
 
 288 F.2d 1, 4 (7th Cir.),
 
 cert. denied,
 
 368 U.S. 826, 82 S.Ct. 47, 7 L.Ed.2d 30 (1961).
 

 Fed.R.Civ.P. 60(b)(2) provides that a party may seek relief from a final judgment because of “newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b).” The ten-day time period for a motion for a new trial has expired, as has the one-year time limit for a motion based on newly discovered evidence. Rule 60(b), however, has a savings clause that permits a court to entertain an independent action if a motion is time-barred. Federal courts impose the same requirements for an independent action based on newly discovered evidence as is required in a Rule 60(b)(2) motion for relief from judgment.
 
 Johnson Waste Materials v. Marshall,
 
 611 F.2d 593, 597 (5th Cir.1980);
 
 Carr v. District of Columbia,
 
 543 F.2d 917, 927 (D.C.Cir.1976).
 

 To prevail on a motion for a new trial based on newly discovered evidence under Rule 60(b)(2), the movant must show 1) that the evidence was discovered after the trial; 2) that the movant used due diligence to discover the evidence during the trial; 3) that the evidence is not merely cumulative or impeaching; 4) that it is material; and 5) that a new trial in which the evidence was introduced would probably produce a different result.
 
 Johnson Waste Materials v. Marshall,
 
 611 F.2d at 597.
 
 See also National Surety Co. v. State Bank,
 
 120 F. 593, 599 (8th Cir.1903) (setting forth requirements of independent action). Additionally, a movant seeking leave from a court of appeals to allow a district court to entertain an independent action must show that it would be “manifestly unconscionable” to enforce the judgment.
 
 Gender, Paeschke & Frey Co. v. Clark,
 
 288 F.2d at 4,
 
 citing Pickford v. Talbott,
 
 225 U.S. 651, 657, 32 S.Ct. 687, 689, 56 L.Ed. 1240 (1912). We conclude that Mrs. Griffin has failed to meet the heavy burden established by the foregoing cases.
 

 The newly discovered evidence that Mrs. Griffin asks us to consider consists of certain documents in the Bank’s possession, including promissory notes, UCC fi
 
 *803
 
 nancing statements, and security agreements, that had been signed without being completed. Mrs. Griffin claims these documents are significant in view of the fact that the trial court found that she had not signed a blank piece of paper.
 

 This evidence meets only the first of the five requirements. Although the documents signed in blank were discovered after trial, the supporting affidavit does not state that Mrs. Griffin’s counsel made a specific pre-trial discovery request for such documents; thus the due diligence requirement has not been satisfied. Second, the evidence is merely cumulative and impeaching. President Rahmig testified at trial that the Bank occasionally had customers sign loan documentation before it was completed, although this was not a standardized practice. Third, the evidence is not material. The Bank admitted that Moore had signed standardized forms in connection with his loans. Finally, it is highly unlikely that the evidence would produce a different result in a new trial. Mrs. Griffin did not contest the validity of the guarantee throughout the settlement negotiations. She approached the Bank with the intention of taking care of her liability under the guarantee. The district court had ample evidence from which to find that Mrs. Griffin was not deceived as to the nature of the document that she had signed.
 

 A litigant may not sit idly by during the course of litigation and then seek to present additional defenses in the event of an adverse outcome.
 
 Dunham v. First National Bank,
 
 86 S.D. 727, 201 N.W.2d 227, 232 (1972). An independent action is not a vehicle for the relitigation of issues.
 
 Bankers Mortgage Co. v. United States,
 
 423 F.2d 73, 79 (5th Cir.),
 
 cert. denied,
 
 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970). Mrs. Griffin had her day in court on the issue of whether she knew what she was signing. The court found that she did. The newly discovered documents shed no new light on whether Mrs. Griffin signed a blank piece of paper. Indeed, the documents support the Bank’s position that she signed a standard guarantee form. Thus, it would be a “useless gesture” for us to grant Mrs. Moore leave to file an independent action in district court.
 
 Geuder, Paeschke & Frey Co. v. Clark,
 
 288 F.2d at 4.
 

 The judgment is affirmed. The motion for alternative relief is denied.
 

 [1]
 

 . The Honorable C. Arlen Beam, Chief Judge, United States District Court for the District of Nebraska.
 

 [2]
 

 . The Honorable David L. Crawford, United States Bankruptcy Judge for the District of Nebraska.
 

 [3]
 

 . Moore testified that all of the assets of the Spur partnership were sold on June 8, 1981.