Joseph CAPUTO

v.

GLOBE INDEMNITY COMPANY.

Civ. A. No. 40116.

United States District Court
E. D. Pennsylvania.

Jan. 31, 1967.

---

Charles Roisman, Philadelphia, Pa., for plaintiff.

Fred C. Aldridge, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for defendant.

### FINDINGS OF FACT, DISCUSSION AND CONCLUSIONS OF LAW AND ORDER

JOSEPH S. LORD, III, District Judge.

Plaintiff instituted this action pursuant to the proviso in F.R.Civ.P. 60(b) that, "This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding * * *." We denied defendant's motion to dismiss on August 26, 1966 in an opinion which sets forth fully the nature of the case. Caputo v. Globe Indemnity Co., 41 F.R.D. 239 (E.D.Pa.1966). Having heard the matter on December 8, 1966, we will order that judgment be entered for defendant on the following summary findings of fact and conclusions of law.

## FINDINGS OF FACT

The defendant herein, Globe Indemnity Company brought suit in this court against the plaintiff, Joseph Caputo, and nine other persons for conversion of its insured's goods. The complaint was filed on November 9, 1962 and Mr. Caputo was properly served on November 27, 1962. Even before this formal notice, Caputo knew or had reason to know of the likelihood that a civil action would be brought against him because he had already pleaded guilty to criminal charges arising out of the same events. At that time, he had been advised by Stanley B. Singer, Esquire, then the attorney of one of his co-defendants in the criminal proceedings, that a civil suit would follow. Apprised of the probability of such proceedings, Caputo engaged Singer to represent him, and after he was served, he had the complaint forwarded to Singer.

Unfortunately, Singer did absolutely nothing to defend his client; no answer to the complaint was ever filed, and settlement was not discussed until after default judgment had been entered against Caputo on March 16, 1964.[1] A writ of execution issued against Caputo on May 21, 1964, and on June 10, 1964, counsel for Globe notified Caputo by letter of the outstanding judgment and the imminency of its foreclosure. Caputo then conferred with Singer, who called counsel for Globe about the prospects for settlement. Nothing came of these discussions. On June 16, 1964, Caputo paid Singer $750 for a possible settlement of the judgment and another $600 for the payment of certain real estate taxes. After that, he tried to reach Singer on a number of occasions, but it became increasingly difficult for him to contact his attorney.

On January 7, 1965, a writ of execution against Caputo again issued. Finally, in January or February of 1965, Caputo sought the advice and assistance, but not direct legal representation of another attorney, Chester T. Cyzio, Esquire. His purpose was not to replace Singer with Cyzio, but primarily to effect the return of the money Caputo had given Singer because he had reason to believe it had been converted by his attorney.[2] Cyzio advised Caputo to discharge Singer and formally request a return of all funds, and on February 24, 1965, Caputo wrote to Singer asking "for a release in order that I may obtain counsel elsewhere."[3] He also demanded remittance of the $1,350. Singer did not reply.

Cyzio testified that Caputo told him nothing about the default judgment (N.T. 68), but at Caputo's urging he wrote to Singer on four occasions between March and May of 1965 and spoke to the errant attorney by phone once. Singer answered none of the letters, even though Cyzio made mention in his last letter of Caputo's expressed intention to file a complaint against Singer with the Philadelphia Bar Association. In late May of 1965, Caputo did complain to the Committee of Censors. Eventually (probably in June, 1965), the funds which Caputo had given to Singer were returned to him.

On or about June 18, 1965, Caputo employed his present counsel to represent him. This affirmative action was no doubt motivated at least in part by receipt of a court order of May 19, 1965 to the effect that his home would be sold by the U. S. Marshal and by a visit from a deputy marshal who inventoried the contents of his home.

Plaintiff's new counsel filed a motion under F.R.Civ.P. 60(b) (1) for relief

---

1. Of course, Caputo personally received all court orders and writs since Singer's appearance was never entered.

2. This belief was founded on notice from the City that his real estate taxes had not been paid and were then delinquent.

3. If Caputo had obtained new counsel at this time, a Rule 60(b) (1) motion need not have been untimely.

from the default judgment entered in Civil Action No. 32325. However, the motion was not filed until June 18, 1965, fifteen months after entry of judgment and over a year after Globe's counsel had taken the trouble to notify Caputo personally of the judgment and writ of execution. On February 25, 1966 this court, by Judge Body, ruled that the motion was untimely under Rule 60(b)(1) [4] and that there was no "other reason justifying relief" under Rule 60(b)(6).

On April 13, 1966 the present "independent action" was filed; the motion to dismiss was denied on August 26, 1966; and a hearing on the merits concluded on December 8, 1966.

### DISCUSSION AND CONCLUSIONS OF LAW

■■■ Counsel have stipulated that if this court were to permit the judgment to be opened, Caputo would have at least a prima facie meritorious defense. (N.T. 2). While this factor is not without significance, our inquiry must go beyond the merits of the original lawsuit if we are to ascertain whether extraordinary relief is warranted in this case. While the independent action authorized by Rule 60(b) is a cumulative, not alternative, remedy, Caputo v. Globe Indemnity Co., supra, it is clearly one which may be afforded only in the most unusual circumstances justifying the exercise of our equitable powers. See, generally, 7 Moore's Federal Practice, ¶ 60.36 et seq.; Moore, Federal Relief from Civil Judgments, 55 Yale L.J. 623 (1946). Mere inadvertence or oversight, however innocent, on the part of the complainant is hardly enough to upset a judgment, even a default judgment, which has been entered for over a year, a period of

time which the drafters of the Federal Rules obviously felt had some significance in the determination of timeliness.

This Circuit, in an opinion by the late Judge Goodrich, had occasion to consider the applicability of the "independent action" clause in Rule 60(b) to a case involving a default judgment, Klapprott v. United States, 166 F.2d 273, 277 (C.A.3, 1948):

> "* * * It appears that the types of situations in which one or more of these procedural devices was available to reopen a judgment are classified, roughly, into four groups: (1) errors of law apparent on the face of the record; (2) matters arising subsequently to an entry of a judgment; (3) newly discovered evidence or fraud in the procuring of the judgment; (4) matters of fact which had not been put in issue or passed on and which were material to the validity and regularity of the proceeding itself. * * *" See, Restatement of Judgments, §§ 118–130.

To paraphrase Judge Goodrich's evaluation of the appellant's case: "It is perfectly clear that when one goes over the allegations of the [Caputo] petition [and the evidence adduced at the hearing] * * * there is not a thing in them which fits the set of facts there presented into any situation on which relief could be given within the bounds of these well-established * * * remedies."

■■■ Where a judgment has become final, it should normally remain that way without further opportunity to litigate the matters embraced in the judgment. The interests of the public and litigants require no less. Statutes, such as Rule 60(b)(1), which extend the common law remedies for correction of errors in the

---

4. Such a motion "shall be made within a reasonable time, and * * * not more than one year after the judgment * * * was entered or taken." The basis for a Rule 60(b)(1) motion is "mistake, inadvertence, surprise, or excusable neglect."

entry of judgments, with liberal time provisions, are statutes of repose and the wide extension of equity jurisdiction to correct errors would be contrary to their spirit. Cf. Rest., Judgments, § 126, comment a.[5]

■ Under well-settled doctrines, the plaintiff Caputo could prevail only if he could show that judgment was entered against him because of some wrongdoing or misconduct of the defendant Globe, Miller Rubber Co. of New York v. Massey, 36 F.2d 466 (C.A.7, 1929); United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93 (1878); or because of an accident or mistake "unmixed with any fault or negligence in himself or his agents." Pickford v. Talbott, 225 U.S. 651, 658, 32 S.Ct. 687, 690, 56 L.Ed. 1240 (1912); Restatement, Judgments, § 129. See also West Virginia Oil & Gas Co. v. George E. Breece Lumber Co., Inc., 213 F.2d 702, 707 (C.A.5, 1964); cf. Philippine National Bank v. Kennedy, 111 U.S.App.D.C. 199, 295 F.2d 544 (1961).

■■ It has not been suggested that Globe acted unfairly at any time. Its counsel took pains to see that Caputo, admittedly untutored in the law, knew exactly what was going to happen and was happening to him as a result of his own attorney's inaction. A more fair-minded attitude cannot be imagined. At the same time, it cannot be gainsaid that Singer, ostensibly retained by Caputo to represent him in the civil proceedings, failed miserably to fulfill the responsibilities inherent in the attorney-client relationship.

No court should pass lightly on a case involving a litigant who has been victimized by a member of the Bar. Under the circumstances, we would be reluctant to hold—although there is ample authority to do so [6]—that the inexcusably neglectful conduct of Singer should bar Caputo from relief.

For the purposes of this case, however, we need not reach that question for we are convinced that Caputo himself acted unreasonably in the conduct of his own legal affairs. From the time he received the complaint until the day he was served with notice of default judgment, a period well over a year, Caputo apparently only once or twice consulted with Singer. When the defendant Globe informed him of the critical nature of his position vis-a-vis the as yet unsatisfied judgment, Caputo's attempts to activate his attorney accelerated. But it seems that what Caputo was most disturbed about was not defending a lawsuit, but getting his money back from Singer. He asked another attorney, Mr. Cyzio, for advice on how best to prod Singer into returning the funds. Significantly, Caputo did nothing at all to secure competent defense counsel until the danger of being ejected from his very home presented itself. Surely, he had lost all faith in Singer long before that time; in fact, he advised Mr. Cyzio of his intention to file a complaint against Singer with the Bar Association, a threat which he wasted comparatively little time in executing. Active in pursuing his own claims against his uncooperative counsel, Caputo apparently was

---

5. Illustration 4 (1948 Supp.) to Section 126(2) (f) suggests a solution to the present case: "A brings an action against B who notifies his attorney, C, to defend the case. C negligently forgets to defend the case for B and judgment is given for A by default. Neither B nor C learn of the judgment until it is too late to take further proceedings in the action. Equitable relief will not be granted." Of course, both Caputo and Singer did know of the judgment, a factor which implies an *a fortiori* result.

6. See 7 Moore's Federal Practice, ¶60.37 [1] n. 19; Restatement of Judgments, Section 126(2) (f): "Equitable relief will not be granted to a party * * * on the sole ground that * * * the negligence of the attorney, agent, trustee or other representative of the present complainant prevented a fair trial." Cf. Myers v. Gardner, 361 F.2d 343 (C.A.9, 1966).

little concerned about the pendency of a $30,000 judgment against him.

We think that the ordinary citizen has enough knowledge of the law to appreciate the grave significance of a judgment in this court and the corresponding necessity of some sort of immediate legal response on his part, if he is to avoid having to pay it. It does not matter that Caputo may have been ignorant of the precise nature and form of that response; it is enough that he knew full well that neither he nor anyone in his behalf was taking affirmative action to forestall the deliberate, inexorable process of this court.

After Caputo received notice of judgment, both from the court and from Globe, he must have realized that his attorney had failed him. Upon receipt of the second writ of execution in January, he could have asked Mr. Cyzio's advice regarding relief from the judgment, then still timely under Rule 60(b) (1). He did not. We think that any continued confidence in Singer beyond the early part of that year would have been not only unwarranted, but unreasonable as well. The defendant Globe ought not suffer additional delay and expense for that improvidence.

 We conclude that the plaintiff Caputo is, if for no other reason, barred by his own inexcusable neglect from prevailing in this action, and that judgment must be entered herein for the defendant, Globe Indemnity Company. While this decision precludes the plaintiff from asserting defenses in the original lawsuit (Civil Action No. 32325) by way of this "independent action", we entertain no views on matters which are now or in the future may be pending before the Court of Appeals with respect to Judge Body's ruling in the original action under Rule 60(b) (1) and (6).

Judgment will be entered for the defendant.

It is so ordered.