DUNHAM, Appellant v. FIRST NAT'L BANK IN SIOUX FALLS, Respondent

(201 N. W. 2d 227)

(File No. 11030. Opinion filed October 6, 1972)

**Davenport, Evans, Hurwitz & Smith,** Sioux Falls, for defendant and respondent.

**H. R. Jackson,** of **Whiting, Lynn, Jackson, Freiberg & Shultz,** Rapid City, for plaintiff and appellant.

WOLLMAN, Judge.

■ This is an appeal from an order dismissing the complaint in an action brought by L. T. Dunham (Dunham) against the First National Bank in Sioux Falls (bank) for relief from a judgment secured more than one year prior to the commencement of the action. For the purposes of reviewing the trial court's ruling on the bank's motion to dismiss, we must assume that all facts properly pleaded in Dunham's complaint are true. Akron Savings Bank v. Charlson, 83 S.D. 251, 158 N.W.2d 523.

In the summer of 1969, Kaiser Enterprises, Inc., was engaged in a manufacturing venture at or near Chamberlain, South Dakota. On or about August 15, 1969, Dunham, Don H. Sticha and George Kaiser allegedly made, executed and delivered to the bank for valuable consideration a continuing guaranty in writing whereby they jointly and severally guaranteed and promised payment to the bank of any and all indebtedness of any kind then existing on said date, created on said date or incurred in the future by or for Kaiser Enterprises, Inc., to the bank.[1] On or about August 27, 1969 the bank loaned Kaiser Enterprises, Inc., the sum of $110,000 on a promissory note executed by the corporation in that amount due November 26, 1969. The note was extended to December 31, 1969.

---

1. According to one of the affidavits filed with Dunham's complaint, the purported loan guaranty was not signed in the presence of any of the bank's officers.

The promissory note went into default and the bank brought suit against Dunham, Sticha and Kaiser on the guaranty, the summons and complaint in said action being served on Dunham on or about February 16, 1970. Upon being served with the summons and complaint, Dunham contacted Sticha and informed him that he, Dunham, had not signed the guaranty which was the basis of the action against him and that his signature which appeared thereon was a forgery. Sticha then informed Dunham that any judgment would first have to be obtained against the corporation, Kaiser Enterprises, Inc., and go unsatisfied before a judgment could be obtained against Dunham, that negotiations were being made for the sale of Kaiser Enterprises, Inc., which sale would soon be completed and the proceeds thereform used to satisfy the claims of the bank, and that therefore Dunham should make no claim that his signature on the guaranty was a forgery.

Sticha and Kaiser contacted Joseph H. Bottum, III, an attorney who was then practicing in Pierre, South Dakota, in regard to representing them and Dunham in the action brought by the bank on the guaranty. Dunham met with Mr. Bottum and the other two defendants on one occasion at a cafe in Minneapolis, Minnesota (Dunham has been a resident of West St. Paul, Minnesota for a number of years) concerning Bottum's representation of the three defendants in the action. Dunham did not mention the matter of the forgery of his signature on the guaranty at this meeting because of the representations that had been made earlier by Sticha to Dunham that Dunham should not claim that his signature on the guaranty was a forgery because the judgment would be satisfied from the proceeds of the sale of the corporation's assets.

Mr. Bottum filed an answer on behalf of the three defendants, the substance of which does not appear in the record in this action. The trial of the bank's action against the three defendants was scheduled to be held in Sioux Falls, South Dakota, on April 20, 1970. On April 19, 1970, Mr. Bottum called J. Bruce Blake, an attorney at law in Sioux Falls, with the request that Mr. Blake appear at the trial the next day. According to Mr. Blake's affidavit filed in support of Dunham's complaint, Mr. Bottum informed Mr.

Blake that Mr. Blake should make an appearance for him in order that the matter not be resolved by default judgment and that Mr. Blake should decline to waive findings of fact and conclusions of law. In accordance with these instructions, Mr. Blake appeared at the trial on April 20, 1970 and refused to waive findings of fact and conclusions of law. He subsequently reported the results of the trial by letter mailed directly to Mr. Bottum. On April 29, 1970, a judgment in the amount of $112,273.37, together with $43.20 costs, was entered against Dunham, Sticha and Kaiser. A copy of this judgment was served upon Mr. Blake as attorney for the three defendants. Mr. Blake admitted service and immediately notified Mr. Bottum of the entry of the judgment and provided him with the copies of the documents that had been served upon him. Mr. Blake never personally met any of the defendants, nor did he ever converse with them by telephone or correspond directly with any of them. All of his instructions were related verbally to him by Mr. Bottum. At no time did Mr. Blake report to any of the defendants personally nor did he provide any of the defendants with copies of the judgment since he had never received the mailing addresses for any of the defendants.

According to Dunham's complaint, as amplified by his supporting affidavit, he never received notice of the trial that was held on April 20, 1970, nor of the judgment that was thereafter rendered against him. The first knowledge that Dunham had of the judgment was when the bank commenced an action in United States District Court in Minnesota on or about May 20, 1970, for the enforcement of the South Dakota judgment against him and the other two defendants. Dunham contacted an attorney in Minneapolis and advised him of the situation. This attorney called the bank's attorney in Sioux Falls and informed him that Dunham's signature on the guaranty was a forgery. Dunham was thereupon referred to a law firm in Sioux Falls, South Dakota. He conferred with members of this firm as early as July of 1970 and several times thereafter regarding the matter of obtaining relief from the judgment of April 29, 1970. Dunham was continuously informed that any effort to obtain relief would be to no avail since there was then no evidence to corroborate his contentions that his signature on the guaranty was a forgery.

During the latter part of April or early part of May 1971, Dunham was informed by one William Cahoon, who was at one time the plant manager of Kaiser Enterprises, Inc., that he had seen Don Sticha sign Dunham's name to the guaranty which was given to the bank. An affidavit to this effect by Mr. Cahoon was filed in support of Dunham's complaint. The affidavits of three other ex-employees of Kaiser Enterprises, Inc. to the effect that they had seen Sticha sign Dunham's name to papers were made a part of the record by leave of court after the court had entered an order granting the bank's motion to dismiss.

Dunham's complaint that the bank's judgment of April 29, 1970 be vacated and that the bank's action against him be dismissed upon the merits was served on the bank on June 29, 1971. A hearing on the bank's motion to dismiss was held on July 6, 1971 and an order dismissing the complaint was entered the same day. Thereafter, a motion for rehearing was denied, although additional affidavits, including those referred to above, were filed pursuant to permission granted by the trial court. The appeal was perfected on September 3, 1971; present counsel for Dunham filed his notice of appearance on October 27, 1971.

Dunham's complaint for relief from the bank's judgment of April 29, 1970 is based upon that portion of SDCL 15-6-60(b) which provides that:

> " * * * Section 15-6-60 does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided by statute or to set aside a judgment for fraud upon the court."

SDCL 15-6-60(b) is for all purposes herein the same as Rule 60(b) of the Federal Rules of Civil Procedure and was adopted as a part of the South Dakota Civil Rules of Procedure effective July 1, 1966. Prior to July 1, 1966, relief from judgments, orders or other proceedings taken against a party was governed by the provisions of SDC 1960 Supp. 33.0108 which provided that:

"The court may likewise, in its discretion, and upon such terms as may be just, allow an answer or reply to be made, or other act to be done, after the time limited by this title, or by an order enlarge such time; and may also, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect, and may supply an omission in any proceeding; and whenever any proceeding taken by a party fails to conform in any respect to the provisions of this title, the court may, in like manner and upon like terms, permit an amendment of such proceeding so as to make it conformable thereto."

█ Thus it can be seen that in the context of the instant case SDCL 15-6-60(b) contains an important provision not found in the original South Dakota statute, namely, the specific provision for an independent action not subject to the one year period of limitations and the reasonable time requirement imposed upon motions made under the provisions of SDCL 15-6-60(b) (1) (2) and (3) or the reasonable time requirement imposed upon motions made under the provisions of SDCL 15-6-60(b) (4) (5) and (6). The only limitation on the independent action in equity is laches. Lockwood v. Bowles D.C., 46 F.R.D. 625; 3 Barron and Holtzoff, Federal Practice & Procedure (Wright Edition) § 1331, p. 432; 7 Moore's Federal Practice, § 60.33, p. 504.

Even under our old statute the validity of an independent action in equity was recognized. See e. g., Purinton v. Purinton, 41 S.D. 125, 169 N.W. 236; Hamill v. Great Northern Copper Co., 52 S.D. 271, 217 N.W. 195; Hamill v. Great Northern Copper Co., 58 S.D. 239, 235 N.W. 607; Sohn v. Flavin, 60 S.D. 305, 244 N.W. 349; Moore v. Connecticut General Life Insurance Co., 71 S.D. 512, 26 N.W.2d 691.

An independent action under the provisions of SDCL 15-6-60(b) is not a proceeding to be routinely considered by a trial court. As is stated in 3 Barron and Holtzoff, Federal Practice & Procedure (Wright Edition) § 1331, p. 433:

"An independent action to set aside a judgment may not be maintained under ordinary circumstances. Resort may be had to it but rarely, and then only under unusual and exceptional circumstances. Generally, a final judgment is not subject to review except in the action in which it was rendered. 'Interest reipublicae ut sit finis litium.' "

■ The remedies provided by SDCL 15-6-60(b) by way of motion for relief and an independent action are cumulative and not alternative. Caputo v. Globe Indemnity Co., D.C.Pa., 41 F.R.D. 239. (See 41 F.R.D. 436 for the sequel to the Caputo case denying plaintiff relief in an independent action because of his own inexcusable neglect).

■■ As originally set forth in the case of National Surety Co. v. State Bank, CCA 8, 120 F. 593, and recently restated in Bankers Mortgage Co. v. United States, 5 Cir., 423 F.2d 73, the criteria to be applied by the court in testing the sufficiency of the claim for relief, are as follows: (1) A judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law. Tested against these criteria in the light of the bank's motion to dismiss, we conclude that Dunham's complaint adequately stated a claim for relief under the provisions of SDCL 15-6-60(b).

The bank's judgment of April 29, 1970 should not in equity and good conscience be enforced when viewed in the context of the factual situation under which the judgment was secured. Dunham's allegation of forgery constitutes a good defense to the alleged cause of action upon which the bank's judgment is founded. Dunham relied upon the attorney secured by his two codefendants. He entrusted the suit papers to his attorney and could reasonably expect that either a sale would be made as

represented to him by his codefendant Sticha or that he would be advised by his attorney of further proceedings so that he could take steps to protect himself. Cf. Ackerman v. Burgard, 79 S.D. 119, 109 N.W.2d 10. The fact that Dunham did not disclose the alleged forgery to his then attorney at the meeting in Minneapolis may be of significance to the trier of fact in the determination of the question of forgery; in the circumstances of this appeal we conclude that Dunham's explanation of his silence is sufficiently plausible to demonstrate his freedom from negligence or fault in not seeking to establish the defense. If the record revealed that Dunham had had notice or knowledge of the forthcoming trial and had deliberately suppressed the disclosure of the forgery in the face of knowledge of the procession of events leading to the entry of judgment against him, we might well be presented with a situation where he would not now be heard to complain that he had not had an opportunity to assert his defense. Here, however, again accepting as true the allegations contained in the complaint, we have a situation where Dunham was not advised as to procedural developments in the case subsequent to the service of the summons and complaint upon him and had no knowledge of the pending trial. It was not until a judgment in excess of $100,000 had been taken against him without his knowledge only some two months after the summons and complaint had been served upon him that Dunham became aware that he had not had his day in court on the issue of forgery. Contrary to the bank's argument that Dunham did nothing to relieve himself from the judgment for more than one year after the entry of judgment, we believe that Dunham acted with reasonable diligence by informing the Minneapolis attorney and the Sioux Falls attorneys about the claimed forgery at the time supplemental proceedings were taken against him in Minnesota. Again, the length of the delay in securing corroborating evidence of the claimed forgery may well be a circumstance for the trier of fact to consider when Dunham's action is heard on its merits.

We believe that our decisions in Alberts v. Bubaker, 72 S.D. 220, 31 N.W.2d 769, and Hinkelman v. Berringer, 77 S.D. 562, 96 N.W.2d 174, are not controlling here inasmuch as Dunham's claim for relief is not based upon a claim of fraud, nor was his defense

of forgery an issue that was tried at the April 20, 1970 trial, nor indeed could it have been tried since Dunham in effect was not represented at the trial.[2]

█ It was suggested during oral argument that Dunham should seek recourse by way of a suit against his original attorney. Even if such an action were maintainable, however, and we of course intimate no view as to the merits of such an action since the full factual background of the circumstances of Mr. Bottum's representation of Dunham has not been developed, we do not believe that it would constitute a remedy sufficient to preclude Dunham's independent action under SDCL 15-6-60(b).

█ We recognize, of course, that an independent action such as Dunham seeks to maintain should not be made the vehicle for relitigation of issues. 3 Barron and Holtzoff, Federal Practice & Procedure (Wright Edition) § 1331, p. 433. Nothing said here should be construed as in any way suggesting that a litigant may sit idly by during the course of litigation and then seek to present additional defenses in the event of an adverse outcome at the original trial. We agree with the general rule that relief by way of an independent action is available only under rather limited circumstances.

In conclusion, then, we emphasize that we hold here only that Dunham's complaint states a cause of action. The order granting the bank's motion to dismiss is reversed and the case is remanded to the circuit court for trial to determine whether Dunham is entitled to have the judgment of April 29, 1970 vacated so that he may raise the issue of forgery as a defense in the bank's original action against him on the guaranty.

All the Judges concur.

---

2. We imply no criticism whatsoever of the Sioux Falls attorney who was called into the case on the eve of the trial and who was supplied with information and instructions that, on the face of the record at least, foreclosed him from effectively representing Dunham's interests at the trial.