In re The PATERNITY OF Joshua Thomas TOMPKINS.

William N. MILLS, Petitioner–Appellant,

v.

Kevin E. BROWN, Respondent–Appellee.

No. 35A02–8702–JV–82.

Court of Appeals of Indiana, First District.

Jan. 28, 1988.

Linda J. Peters, F. Walter Riebenack, Sowers, Larson, Riebenack & Connolly, Fort Wayne, for petitioner-appellant.

Robert S. Garrett, Palmer, Bowers & Brewer, Huntington, for respondent-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

William N. Mills as guardian for Joshua Thomas Tompkins appeals from the Huntington Circuit Court's grant of Kevin E. Brown's motion for judgment on the pleadings and denial of Mills' motion to consolidate actions. We reverse in part, and affirm in part.

## FACTS

On June 15, 1980, Joshua Thomas Tompkins was born to Debra Tompkins Booher. At the time Joshua was born, Debra was married to, but separated from, Michael Tompkins, her second husband. On October 1, 1980, the Allen Circuit Court dissolved Debra and Michael's marriage. Apparently, Debra and Joshua resided with Debra's first husband, Kevin Brown, for approximately a year. In August of 1981, Debra and Joshua moved in and lived with Gary Booher. On December 12, 1981, Debra married Gary. Subsequently, Debra and Kevin filed a joint petition to establish paternity of Joshua, and on February 5, 1982, a judgment was entered declaring Kevin as the father of Joshua.

Debra remained married to Gary and retained custody of Joshua. On August 28, 1984, a daughter, Jasmine Lee, was born to Debra and Gary. Gary and Debra raised and provided support for both Joshua and Jasmine. On September 2, 1985, Debra died from an aneurysm in her brain. Gary filed a petition to establish a guardian for Joshua. The Huntington Circuit Court appointed William N. Mills as guardian for Joshua. Thereafter, Mills, upon obtaining evidence that Kevin was not Joshua's biological father, filed suit to set aside the paternity judgment on the basis of fraud. Mills also filed a motion to consolidate the guardianship and paternity suits. Kevin challenged the suit and motion to consolidate and filed a motion for judgment on the pleadings based upon application of

*Rundel v. Shady* (1986), Ind.App., 492 N.E. 2d 694. The trial court denied Mills' motion to consolidate, granted Brown's motion for judgment on the pleadings, and dismissed Mills' complaint. Mills appeals the trial court's decisions.

## ISSUES

While several interconnected issues have been raised, the following two (2) issues are dispositive:

1. Whether the trial court erred by granting Brown's motion for judgment on the pleadings based upon *Rundel* and by dismissing Mills' suit to set aside the paternity judgment.

2. Whether the trial court erred by denying Mills' motion to consolidate actions.

## DISCUSSION AND DECISION

*Issue One*

Mills argues that the trial court improperly granted Brown's motion for judgment on the pleadings. Under Indiana Rules of Civil Procedure, Trial Rule 12(C), a court may grant a motion for judgment on the pleadings and dismiss the suit, if a review of the pleadings establishes that a redressable claim does not exist or that no material issue of fact exists and that the movant is entitled to judgment as a matter of law. *Gregory and Appel, Inc. v. Duck* (1984), Ind.App., 459 N.E.2d 46, 49–50; *Mills v. American Playground Device Co.* (1980), Ind.App., 405 N.E.2d 621, 626–27, *reh. denied* 427 N.E.2d 1130 (1981); *Anderson v. Anderson* (1979), Ind.App., 399 N.E.2d 391, 406. A motion for judgment on the pleadings "tests the law of the claim and not the facts that support it." *Anderson,* at 406. The court must view the pleadings in a light most favorable to the nonmovant, accepting all facts well pleaded as admitted and drawing all reasonable inferences in favor of the non-movant. *Duck,* at 49–50; *Mills,* at 626–27; *Id.* On review the appellate court applies the same test as the trial court. *Duck,* at 50.

In the present case, the trial court erred in granting Brown's motion for judgment on the pleadings. The trial court's decision

to grant judgment on the pleadings apparently was based in part upon application of *Rundel*. However, *Rundel* is distinguishable and does not apply to the case. Furthermore, the pleadings, viewed in a light most favorable to Mills, do present a redressable claim under Indiana law and do not establish that Brown was entitled to judgment as a matter of law.

In *Rundel*, Rundel, the mother, and Shady, the putative father, filed a joint, verified petition to establish paternity. Subsequently, but before the trial court entered a paternity judgment, Rundel filed a request for blood testing, due to circumstances that suggested that Shady may not have been the biological father. Shady, however, requested a motion for judgment on the pleadings. At the hearing, the referee determined that Rundel's request for blood testing was not supported by the pleadings, granted Shady's motion, and found Shady to be the father. *Rundel*, at 695–96.

On appeal, the court of appeals affirmed. The court analyzed the appeal with regard to the child's interests in the paternity determination, and with regard to the public's interest. The court went on to find that Rundel's verified petition was binding on her as a conclusive admission, absent withdrawal, and held that she could not introduce evidence at the hearing to contradict the admissions. The court then reviewed the paternity statute's blood testing provisions and determined that blood tests were required only in adversarial settings. Thus, since the petition for paternity was joint and nonadversarial, the court of appeals held that the trial court properly denied the blood testing proceedings and properly granted Shady's motion for judgment on the pleadings. *Id.* at 696–97.

The present case is distinguishable from *Rundel* in several respects. First, the present case is procedurally and substantively different than *Rundel*. *Rundel* involved an evidentiary question regarding the obtainment and admission of evidence during the paternity proceeding. The present case, however, involves an independent action attacking the paternity judgment based upon fraud. The difference between the determination of the admissibility of evidence and the determination of the existence of fraud makes *Rundel* inapposite to this case.

■ Second, in *Rundel*, the evidence was excluded because the petitioner sought to contradict her own conclusive admissions. In the present case, the guardian for Joshua seeks to present evidence which contradicts the admissions and paternity judgment. Although Joshua was a party to the paternity suit, neither Brown's nor Debra's admissions were binding on him. The rule stated in *Rundel* only applies to the party filing the pleading and making the admission. 71 C.J.S. *Pleading* § 160(c) (1951).

Third, the facts in the present case suggest that Joshua's best interests and the public policy considerations weigh differently than in *Rundel*. In *Rundel*, the mother was unmarried. If paternity was not established, then in all probability the child would have become a ward of the State. In the present case, Debra was married at the time of the paternity proceeding and when Joshua was born. The facts suggest that Joshua would not become a ward of the State if the paternity judgment was overturned. Thus, the public policy considerations are not as predominant in this case.

Joshua's best interests are also different than in *Rundel*. In *Rundel*, the child's support and education were in question. In the present case, neither support, maintenance, nor education are lacking or appear endangered. Furthermore, the facts compel the conclusion that Joshua's need for stability and psychological support would be served best if he were allowed to remain with his half-sister and step-father, rather than his father as presumed under the paternity judgment. Accordingly, the difference between the procedural posture, substantive issues, and facts all establish that *Rundel* is inapposite. Therefore, the trial court erred by granting Brown's motion for judgment on the pleadings under the law found in *Rundel*.

■ The grant of Brown's motion for judgment on the pleadings was also im-

proper under Indiana's rules for attacking a judgment based upon fraud. Although Brown correctly points out that the doctrine of res judicata prevents collateral attacks, a judgment may be challenged in a direct attack for fraud. 17 I.L.E. *Judgment* § 273 (1959). Under Indiana's rules and the federal rules a judgment may be attacked directly on the basis of fraud in three (3) different ways. 7 Moore's Federal Practice ¶ 60.33 (1987). The first method is found in Indiana Rules of Civil Procedure, Trial Rule 60(B)(3). Under Trial Rule 60(B)(3) a judgment may be attacked for fraud. The fraud alleged can be either intrinsic or extrinsic, and distinction is not required. Trial Rule 60(B)(3). However, a motion under Trial Rule 60(B)(3) must be made within one (1) year from the date of judgment. Trial Rule 60(B)(8); *Smith v. Tisdal* (1985), Ind.App., 484 N.E.2d 42, 44. In the present case, the suit challenging the paternity judgment was not brought within one (1) year. Therefore, Trial Rule 60(B)(3) cannot sustain Mills' pleadings.

■ The second and third methods of attacking a judgment based on fraud are through an independent action. 7 Moore's Federal Practice ¶ 60.33 (1987). This method is referred to in a savings clause of Trial Rule 60(B)(8), which states that the rule, "does not limit the power of a court to entertain an independent action to relieve a party from judgment order or proceeding." T.R. 60(B)(8); 7 Moore's Federal Practice ¶ 60.33. The court's power to entertain and grant relief in an independent action is based upon the court's equitable jurisdiction. 7 Moore's Federal Practice ¶ 60.36 (1987). The court's equitable powers provide flexibility in fashioning relief. *General Electric Co. v. Bootz Mfg. Co.* (S.D.Ind. 1968), 289 F.Supp. 504, 507. However, in determining whether to grant relief in an independent action the court should determine if the following essential elements have been established by the aggrieved litigant:

"(1) A judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which pre-vented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law."

*Bankers Mortgage Co. v. United States* (5th Cir.1970), 423 F.2d 73, 79, *cert. denied* 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793; *Chicago, R.I. and P. Ry. Co. v. Callicotte* (8th Cir.1920), 267 F. 799, 810; *Dunham v. First National Bank in Sioux Falls* (1972), 86 S.D. 727, 734, 201 N.W.2d 227, 231.

■ One basis for an independent action to set aside a judgment is fraud. 7 Moore's Federal Practice ¶ 60.37 (1987). However, our courts have stated that an independent action based upon fraud is governed by the intrinsic-extrinsic fraud distinction, and that only extrinsic fraud will support the setting aside of a judgment. *Chermak v. Chermak* (1949), 227 Ind. 625, 628, 88 N.E.2d 250, 251; *Magnuson v. Blickenstaff* (1987), Ind.App., 508 N.E.2d 814, 818. Generally, intrinsic fraud includes those matters which have been presented to and considered by the court in its judgment, such as a fraudulent instrument or perjured testimony. *United States v. Throckmorton* (1878), 98 U.S. (8 Otto) 61, 66, 25 L.Ed. 93, 95, *Chermak*, 227 Ind. at 627, 88 N.E.2d at 251; *Magnuson*, at 818. However, if the fraudulent matter prevents a trial of the issue in the case or improperly procures the exercise of the court's jurisdiction, then the fraud has been defined as extrinsic, or fraud in the procurement. *Throckmorton*, 98 U.S. at 65, 25 L.Ed. at 95; *Chermak*, 227 Ind. at 628, 88 N.E.2d at 251; *Magnuson*, at 818. A few examples of extrinsic fraud were outlined in *Throckmorton* as follows:

"Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to

represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and fair hearing."

*Throckmorton*, 98 U.S. at 65–66, 25 L.Ed. at 95. Furthermore, although perjury alone generally does not amount to extrinsic fraud, several cases reveal that if the perjury prevents a full adversarial trial of the issues or improperly procures the court's jurisdiction and judgment, then the perjury will support the setting aside of a judgment. *Marshall v. Holmes* (1891), 141 U.S. 589, 601, 12 S.Ct. 62, 66, 35 L.Ed. 870, 874; *Leber–Krebs, Inc. v. Capitol Records* (2nd Cir.1985), 779 F.2d 895, 899; *Cotterell v. Koon* (1898), 151 Ind. 182, 187, 51 N.E. 235, 237; *Asbury v. Frisz* (1897), 148 Ind. 513, 518, 47 N.E. 328, 330; *Kirby v. Kirby* (1895), 142 Ind. 419, 421, 41 N.E. 809, 810 *overruled in part in Bruce v. Osgood* (1899), 154 Ind. 375, 56 N.E. 25; *Gorman v. Johnson* (1910), 46 Ind.App. 672, 675–76, 91 N.E. 971, 972–73, *trans. denied. See also Cuthill v. Ortman–Miller Machine Co.* (7th Cir.1954), 216 F.2d 336, 338–39; *Publicker v. Shallcross* (3rd Cir.1939), 106 F.2d 949, 951–52; *Callicotte*, at 809–10; *Graver v. Faurot* (7th Cir.1896), 76 F. 257, 262; *Bootz*, at 507; *Allen v. Allen* (1954), 341 Mich. 543, 551, 67 N.W.2d 805, 808; *Rogoski v. City of Muskegon* (1981), 107 Mich.App. 730, 737, 309 N.W.2d 718, 721, fn. 3. *But cf. Chermack*, 227 Ind. at 628–29, 88 N.E.2d at 251–52 (implicitly rejecting cases which allow suit for perjury in obtaining a judgment referring to this as fraud in the inducement or intrinsic fraud). An independent action based on fraud is not barred by a one (1) year period of limitations. *Caley v. Lung* (1971), 257 Ind. 116, 119, 271 N.E.2d 891, 893; *Magnuson*, at 817–18; *Tisdal*, at 44 fn. 2. However, an independent action based upon this ground is subject to the equitable doctrine of laches. 7 Moore's Federal Practice

¶ 60.37[2]; *Dunham*, 201 N.W.2d at 230. Examination of the following Indiana cases reveals that the allegations in the present case presented a viable independent action for fraud and were sufficient to withstand a motion for judgment on the pleadings.

The Indiana Supreme Court upheld attacks to judgments based upon extrinsic fraud or fraud in the procurement in *Cotterell, Asbury,* and *Kirby.* In *Cotterell,* the supreme court upheld the trial court's decision holding that a quiet title judgment was void. *Cotterell*, 151 Ind. at 188, 51 N.E. at 237. The defendant obtained the quiet title judgment by obtaining the appointment of a guardian ad litem who assisted the defendant in quieting title against the children, and by fraudulently suppressing his children's interests in the real property. *Id.* 151 Ind. at 187–88, 51 N.E. at 237. As the supreme court stated,

"He was thus enabled to control both sides of the case and give to it the appearance of *bona fides* as an adversary proceeding, while it was all for his accommodation, to his advantage and to the detriment of most helpless infants. Such control, with such results, amounts to fraud."

*Id.* 151 Ind. at 187, 51 N.E. at 237.

In *Asbury*, Frisz, the defendant, obtained a guardianship judgment by fraudulently filing a petition alleging that Asbury was of unsound mind, incapable of managing his own estate, and incarcerated at the Central State Hospital for the Insane at Indianapolis. *Asbury*, 148 Ind. at 513, 47 N.E. at 329. Frisz also misrepresented to the court that Asbury could not be produced in court without injury to his health. *Id.* 148 Ind. at 516, 47 N.E. at 330. In truth, Frisz knew Asbury was not incarcerated and knew Asbury could have attended court without injury to his health. *Id.* Our supreme court determined that Frisz's misrepresentation to the court as to the ability of Asbury to be present at trial alone was sufficient to require reversal. *Id.* 148 Ind. at 518, 47 N.E. at 330. Thus, the court overruled the grant of the demurrer to the complaint and ordered further

proceedings. *Id.* 148 Ind. at 519, 47 N.E. at 330.

In *Kirby,* the complaint alleged that land owned by Clay Kirby was willed to his son for life and then to Kirby's grandchildren. *Kirby,* 142 Ind. at 419, 41 N.E. at 809. Further, the complaint alleged that the son and the older grandchildren "conspired and confederated" to deprive the younger children of their interest in the land by fraudulently procuring a judgment setting aside the will. *Id.* According to the complaint, the younger children's interests and defenses to the will contest were unrepresented and suppressed from the court. *Id.* 148 Ind. at 420, 41 N.E. at 809. The complaint also alleged that after the fraudulent judgment was obtained the land was transferred to the son and suit was brought to quiet title. *Id.* 142 Ind. at 421, 41 N.E. at 809. Our supreme court held that the complaint alleged sufficient facts of fraud in the procurement and ordered a trial on the issue. *Id.* 142 Ind. at 421–22, 41 N.E. at 810.

■ In the present case, as in *Cotterell, Asbury,* and *Kirby,* Mills' pleadings allege facts which support an independent action for extrinsic fraud or fraud in the procurement. The allegations in Mills' complaint assert more than mere perjury. The facts suggest that Brown and Debra knew that Brown was not the biological father of Joshua. Furthermore, that in spite of this knowledge Brown fabricated and filed a joint petition to establish paternity. The petition fraudulently provided that Brown was the biological father of Joshua. The complaint also alleges facts suggesting that Joshua's interests were not represented. Although statutorily bound to represent Joshua, the prosecutor apparently worked as Brown's representative. The facts alleged also suggest that Debra's interests were not represented, and that Debra never even met the attorney who filed the joint petition. The facts further suggest that Debra's second husband's interests may have been affected fraudulently. As in *Cotterell, Asbury* and *Kirby,* the facts suggest that Brown fraudulently obtained a paternity judgment from the court

such that Joshua was prevented from presenting his case, from asserting his interests, and from determining his actual biological father. Therefore, under our rules for challenges based on extrinsic fraud the trial court erred in granting judgment on the pleadings, because the pleadings suggest that Joshua's interests apparently were suppressed fraudulently by Brown's actions and these allegations provided a sufficient basis for setting aside the judgment.

■ A second ground for an independent action to set aside a judgment can be based upon the doctrine of "fraud on the court". 7 Moore's Federal Practice ¶ 60.33. This type of fraud also is referred to in T.R. 60(B)'s savings clause. However, unlike an action for extrinsic fraud, an action for "fraud on the court" is not limited by laches and may be brought at anytime. 7 Moore's Federal Practice ¶ 60.33. Courts and commentators have struggled with the task of defining and applying the doctrine of "fraud on the court". *See e.g., Toscano v. C.I.R.* (9th Cir.1971), 441 F.2d 930, 933. The doctrine of fraud on the court was examined and applied in *Hazel–Atlas Glass Co. v. Hartford Empire Co.* (1944), 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250, in which the court held that a party's collusion with an attorney and fabrication of a trade journal article to obtain a patent amounted to fraud on the Patent Office when the patent was issued and fraud on the court when the fabricated article was used to support an infringement suit. *Hazel–Atlas,* 322 U.S. at 245–46, 64 S.Ct. at 1001, 88 L.Ed. at 1255. The court provided:

"Every element of the fraud here disclosed demands the exercise of the historic power of equity to set aside fraudulently begotten judgments. This is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury. Here, even if we consider nothing but Hartford's sworn admissions, we find a deliberately planned and carefully executed scheme to defraud not only the

Patent Office but the Circuit Court of Appeals. Cf. *Marshall v. Holmes, supra.* Proof of the scheme, and of its complete success up to date, is conclusive. Cf. *United States v. Throckmorton, supra.* And no equities have intervened through transfer of the fraudulently procured patent or judgment to an innocent purchaser. Cf. *Ibid; Hopkins v. Hebard,* [1914] 235 U.S. 287 [35 S.Ct. 26, 59 L.Ed. 232]."

*Id.* The doctrine of "fraud on the court" as applied in *Hazel–Atlas* has been narrowly applied by the courts and appears to be limited to only the most egregious circumstances involving the courts. 7 Moore's Federal Practice ¶ 60.33. However, if a party establishes that an unconscionable plan or scheme was used to improperly influence the court's decision, and that such acts prevented the losing party from fully and fairly presenting his case or defense, then "fraud on the court" exists. *See e.g., Toscano,* at 934.

■ In the present case, the facts alleged and their underlying implications reveal that a cause of action for fraud on the court existed. According to the pleadings Brown misled the court as to the paternity of Joshua. Furthermore, Brown's action appeared to have been planned in an attempt to prevent Joshua from determining his true biological father. The scheme to suppress true paternity succeeded when the court declared Brown as Joshua's biological father. As in *Hazel–Atlas* and *Toscano,* Joshua was prevented from having an actual day in court, and the court was defrauded by use of the fabricated petition. Therefore, the trial court should not have granted the motion for judgment on the pleadings.

*Issue Two*

■ Mills argues next that the trial court erred in denying the motion to consolidate the guardianship action with the action challenging the paternity judgment. Under Indiana Rules of Civil Procedure, Trial Rule 42(A) a trial court may consolidate actions before the court that involve common questions of law or fact. The decision to consolidate actions is purely discretionary and will be overturned only when a manifest abuse of discretion is established. *State v. Schuetter* (1987), Ind. App., 503 N.E.2d 418, 421; *Farm Bureau Ins. Co. v. Crabtree* (1984), Ind.App., 467 N.E.2d 1220, 1223, *trans. denied; Kruse, Kruse, and Miklosko v. Beedy* (1976), 170 Ind.App. 373, 422, 353 N.E.2d 514, 543, *trans. denied.* A party must show resultant prejudice as a prerequisite to establishing that a trial court erred in denying a motion under Trial Rule 42. *Crabtree,* at 1223. In the present case, although Mills correctly points out common questions between the paternity challenge and the guardianship action, the determinative facts and issues were dissimilar. Thus, Mills failed to establish an abuse of discretion. Furthermore, Mills failed to demonstrate that prejudice resulted from the trial court's ruling. Therefore, the trial court's denial of Mills' motion for consolidation is affirmed.

Reversed in part and affirmed in part.

ROBERTSON and NEAL, JJ., concur.