**In the Matter of PATERNITY OF R.C.**

**G.M., Appellant,**

v.

**A.C., Appellee.**

**No. 02A04–9107–CV–209.[1]**

Court of Appeals of Indiana,
Fourth District.

Feb. 27, 1992.

---

1. This case was diverted to this office by direction of the Chief Judge.

Roland W. Gariepy, Fort Wayne, for appellant.

CONOVER, Judge.

G.M., the putative father of an out-of-wedlock male child (R.C.), appeals the denial of his action to set aside filiation and support on grounds of newly discovered evidence and fraud.

We reverse.

■ G.M. raises two issues for our review which we restate as one:

1. whether the trial court abused its discretion, in denying, without a hearing, a putative father's petition for relief based on extrinsic fraud.[2]

■ A.C., the mother,[3] filed a complaint against G.M. alleging paternity, on May 13, 1988. G.M. voluntarily admitted fatherhood. The court entered a finding of paternity on June 7, 1988, and further ordered G.M. to execute a wage garnishment for child support. At that time, A.C. swore her allegation of paternity against G.M. was true.

G.M. petitioned for relief on January 30, 1991, alleging fraud, under Ind. Trial Rule 60(B). In addition to filing his own affidavit, G.M. filed affidavits supporting his theory of extrinsic fraud from A.C. and Jolene Hudson, a previous friend of A.C.'s. A.C. now states she defrauded both the court and G.M. because she was having a relationship with G.M., and at that time, the real father, D.A., was unemployed, and away at school. (R. 18).

G.M. says the reasons he failed to contest paternity at that time included: having a relationship with A.C., his "emotional status," and lacking the funds necessary to contest the action. (R. 19). Jolene Hudson's affidavit corroborates A.C.'s statements. G.M.'s relief petition was denied without a hearing on March 8, 1991.

The trial judge denied G.M.'s petition, stating:

"On January 30, 1991, the Respondent by counsel, filed a Motion [For] Relief From Judgment; and on March 4, 1991, the Respondent filed an affidavit of the Petitioner, and an affidavit of the Respondent, here at Court. Having reviewed the pleadings, including the Petition to Establish Paternity, and the Order of the Court entered on June 7, 1988, showing the parties appearing in person, and the Respondent admitting paternity, the Court now Denies the Respondent's Motion for Relief [from] Judgment."

(R. 21).

■ G.M. argues his T.R. 60(B) petition was improperly dismissed because a redressable claim due to extrinsic fraud existed. We agree. Pursuant to T.R. 12(C), a court may grant a motion for judgment on the pleadings and dismiss the suit, if a

---

**2.** We believe the appellant designates the type of fraud here perpetrated as "extrinsic fraud." "Intrinsic fraud" is fraud actually presented and considered by the court in arriving at the judgment assailed, such as a fraudulent instrument, perjured testimony, and the like. *Chermak v. Chermak* (1949) 227 Ind. 625, 88 N.E.2d 250, 251; *Magnuson v. Blickenstaff* (1987) Ind.App., 508 N.E.2d 814, 818. A judgment will not be set aside for intrinsic fraud. *Chermak, Id.; Magnuson, Id.* On the other hand, "extrinsic fraud" is fraud or deception practiced upon the unsuccessful party which prevents him from fully exhibiting his case to the court, that is,

fraud outside the issues in the case. Extrinsic fraud warrants the setting aside of a judgment. *Id.*

We believe the fraud here was indeed extrinsic because A.C.'s fraudulent statement to G.M. that he was the natural father of her son fraudulently procured G.M.'s admission he was in fact the natural father.

**3.** A.C. has not submitted a brief. Accordingly, G.M. need only make a *prima facie* showing of reversible error. *D.H. v. J.H.* (1981), Ind.App., 418 N.E.2d 286, 289.

review of the pleadings establishes a redressable claim does not exist or no material issue of fact exists and the movant is entitled to judgment as a matter of law.[4] *In re Paternity of Tompkins* (1988), Ind. App., 518 N.E.2d 500, 501; *Gregory and Appel, Inc. v. Duck* (1984), Ind.App., 459 N.E.2d 46, 49–50; *Mills v. American Playground Device Co.* (1980), Ind.App., 405 N.E.2d 621, 626–27, *reh. denied* 427 N.E.2d 1130 (1981); *Anderson v. Anderson* (1979), Ind.App., 399 N.E.2d 391, 406.

Since triable issues of fact and a redressable claim were raised by G.M.'s petition, the trial court should have set the matter for hearing. We must first look to the trial rules for a determination of whether A.C.'s judgment of paternity may be attacked under the theory of fraud. Under Indiana rules, a judgment may be attacked directly on the basis of fraud in three (3) ways. *Tompkins,* 518 N.E.2d at 504. Under T.R. 60(B)(3) a judgment may be attacked for fraud. The fraud alleged can be either intrinsic or extrinsic, and distinction is not required. However, a motion under T.R. 60(B)(3) must be made within one (1) year from the date of the judgment. T.R. 60(B)(3); *Tompkins,* at 504; *Smith v. Tisdal* (1985), Ind.App., 484 N.E.2d 42, 44. In the present case, the suit challenging the paternity judgment was not brought within one (1) year. Therefore, T.R. 60(B)(3) cannot sustain G.M.'s petition for relief.

■ However, an independent action for fraud upon the court is a recognized method of gaining relief from a judgment, and unlike an action based on fraud under subdivision (B)(3), may be brought more than one year after judgment. *Magnuson v. Blickenstaff* (1987), Ind.App., 508 N.E.2d 814, 817. Courts have equitable powers to provide flexibility in fashioning relief. *General Electric Co. v. Bootz Mfg. Co.* (1968), 289 F.Supp. 504, 507. However, in determining whether to grant relief in an independent action, the court should determine if the following essential elements have been established by the aggrieved litigant:

(1) a judgment which ought not, in equity and good conscience, to be enforced;

(2) a good defense to the alleged cause of action on which the judgment is founded;

(3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense;

(4) the absence of fault or negligence on the part of the defendant; and

(5) the absence of any adequate remedy at law.

*Tompkins, supra,* 518 N.E.2d at 504, *citing, Bankers Mortgage Co. v. United States* (5th Cir.1970), 423 F.2d 73, 79, *cert. denied,* 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793. *See also, Chicago, R.I. and P. Ry. Co. v. Callicotte* (8th Cir.1972), 267 F. 799, 810; *Dunham v. First National Bank in Sioux Falls* (1972), 86 S.D. 727, 734, 201 N.W.2d 227, 231.

Our courts have stated an independent action based on fraud is governed by the intrinsic-extrinsic fraud distinction, and only extrinsic fraud will support the setting aside of a judgment. *Tompkins, supra,* at 504. Generally, intrinsic fraud includes those matters which have been presented to and considered by the court in its judgment, such as fraudulent instructions or perjured testimony. *United States v. Throckmorton* (1878), 98 U.S. (8 Otto) 61, 66, 25 L.Ed. 93, 95.

■ However, if the fraudulent matter prevents a trial of the issue in the case or improperly procures the exercise of the court's jurisdiction, then the fraud has been defined as extrinsic. *Id.,* 98 U.S. at 65. *See, e.g. Throckmorton, supra,* 98 U.S. at 65–66, where an unsuccessful party has been prevented from exhibiting fully his case, by fraud, or deception practiced on him by his opponent, extrinsic fraud has been found to exist.

---

**4.** A.C.'s motion for judgment on the pleadings in the record is absent. However, after reviewing the judge's finding, a ruling based solely on the pleadings is evident.

In the present case, the facts alleged and their underlying implications reveal a cause of action for fraud on the court existed. According to the pleadings, A.C. misled the court as to the paternity of her son. Furthermore, A.C.'s action appeared to have been planned in an attempt to prevent G.M. from knowing the male child was not his. Another cause of A.C.'s fraud was to gain support money because the real father was unemployed and at school. The scheme to suppress true paternity succeeded when the court declared G.M. the biological father. G.M. was prevented from having a trial on the issue of paternity. The court was defrauded by the use of the fabricated petition. Therefore, the trial court should not have dismissed G.M.'s petition for relief.

This decision does not minimize the importance of preserving judgments. The opening of a paternity case sought by a party who has previously acknowledged himself to be the father, should only be allowed in extreme and rare instances. However, it would be grossly inequitable to allow the instant paternity judgment to stand in light of the blatant fraud perpetrated on the court and G.M. by A.C.

Reversed and remanded for further proceedings consistent with this opinion.

MILLER, J., concurs.

SHIELDS, J., dissents with separate opinion.

SHIELDS, Judge, dissenting.

I vote to affirm the trial court's judgment.

The conduct which the majority finds constitutes the required extrinsic fraud is A.C.'s verified petition to establish paternity in which she swore G.M. was the father of R.C. As a matter of well-established law, acknowledged by the majority, "only extrinsic fraud will support the setting aside of a judgment." Op. at 156. The definition of extrinsic fraud was specifically articulated in *United States v. Throckmorton* (1878), 98 U.S. (8 Otto) 61, 66, 25 L.Ed. 93 (citations omitted):

Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing.

This general rule, upon which the majority relies to reverse the trial court's judgment, compels affirmance of that judgment.

False evidence, whether in the form of perjured testimony given under oath in open court or in a deposition, pleading or affidavit admitted in evidence, constitutes intrinsic fraud. *Throckmorton.* Further, a judgment which a party seeks to set aside solely upon the claim the judgment is based upon perjured testimony or false evidence, is a judgment based upon a proceeding at which the parties either were heard or had the opportunity to be heard. In other words, when an issue is before a court for resolution, and the party seeking to set aside the judgment could have addressed the issue in the proceeding and, in particular, could have addressed and disputed the perjured testimony, the matter in issue has been tried or might have been tried.

Here, assuming the statements of paternity in the verified petition are false, the petition nevertheless is part of the record in this case. The issue of paternity was a matter before the court for resolution and could have been tried. The conduct about which G.M. complains constitutes intrinsic fraud, as the trial court correctly determined. The effect of the majority opinion is to allow a final judgment to be attacked at any time if a party to that judgment

alleges that an intentional misrepresentation was made by affidavit, deposition, or testimony presented in the case.

Public policy has always favored the termination of litigation after a party has had an opportunity for a trial and an appeal of the trial court's judgment. Consequently, the grounds upon which a final judgment may be set aside, other than by appeal, are limited in order to allow the parties and the public to rely on duly-entered final judgments.

The fact that G.M. cannot have the judgment set aside based upon a claim of extrinsic fraud does not mean he might not have had relief had he proceeded on some other grounds. An avenue of relief may have been available under Ind. Trial Rule 60(B)(8) if G.M. had externally obtained clear medical proof that he is not the father of R.C. In *Fairrow v. Fairrow* (1990), Ind., 559 N.E.2d 597, our supreme court recognized that a trial court has equitable discretion to grant relief to a party who challenges a support order on the basis of non-paternity if the party comes to court with "externally obtained clear medical proof." *Id.* at 600. In *Fairrow*, the court stressed "that the gene testing results that gave rise to the prima facie case for relief in this situation became available independently of court action." *Id.*